Elaine M. CALLAHAN, Plaintiff,

v.

HARVEST BOARD INTERNATIONAL, INC., Kenneth A. Robertson, personally and as Sr. V.P. Finance and Administration, Defendants.

No. CIV. A. 00–11578–PBS.

United States District Court, D. Massachusetts.

March 28, 2001.

Elaine M. Callahan, Newton, MA, for Elaine M. Callahan, Plaintiffs.

Anthony A. Froio, Robins, Kaplan, Miller & Ciresi, L.L.P., Boston, MA, Thomas W. Collins, III, McDowell, Rice, Smith & Gaar, Overland Park, KS, for Harvest Board International, Inc., Joseph Bujold, personally and as CEO, W.D. Eberle, personally and as Chairman of the Board, Kenneth A. Robertson, personally and as Sr. V.P. Finance and Administration, Defendants.

## ORDER

SARIS, District Judge.

After review of the objections, the Court adopts the report and recommendation and orders dismissal of the complaint without prejudice on the ground of lack of personal jurisdiction over defendants. I add only one point concerning the letter sent by defendant Harvest Board in response to plaintiff's Chapter 93A letter which plaintiff alleges contained fraudulent misrepresentations. The magistrate judge pointed out that even if these allegations were true, plaintiff did not demonstrate "tortious injury" flowing from that fraud or unfair practice sufficient to convey personal jurisdiction. (Opinion p. 56). In her objections, Ms. Callahan argues (in conclusory fashion and without an affidavit) that the fraudulent misrepresentations caused a delay from receipt of the denial letter dated September 22, 1999 to the date of filing suit in August, 2000. (Docket 50, p. 47). However, even if plaintiff reasonably relied on the statements so as to defer filing the litigation, there is no evidence of any tortious injury because of any such delay. The loss of the use of money is compensated by interest rates payable on the promissory notes or under state law.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Elaine A. Callahan ("Callahan") is an attorney admitted to practice in the

Commonwealth of Massachusetts. Callahan, who is representing herself, is seeking to recover amounts due on promissory notes allegedly issued by the defendant Harvest Board International, Inc. ("Harvest Board") to Carroll L. Cheverie, Jr. ("Cheverie"). Cheverie, now deceased, once was Callahan's client. After his death, Callahan obtained a default judgment against Cheverie and his estate for unpaid legal services rendered, and then levied on some, but not all, of the notes she is now seeking to enforce.

Callahan commenced this action against Harvest Board and its Senior Vice President of Finance, Kenneth Roberson ("Roberson"). The complaint sounds in four counts: breach of contract (Count I); violation of Mass. Gen. Laws ch. 93A (Count II); fraud/misrepresentation/deceit (Count III); and negligence (Count IV). The ch. 93A and tort claims, as well as Roberson's personal liability, are premised on Roberson's signing on behalf of Harvest Board a response to a letter demanding payment of the notes which contained, according to Callahan, false and fraudulent reasons for denying liability.

Harvest Board and Roberson have moved to dismiss the claims against them on the grounds that this court lacks personal jurisdiction over them, that the conduct complained of under ch. 93A did not occur primarily and substantially in the Commonwealth, and that the plaintiff has failed to plead fraud with particularity. (Docket # 7, # 9). In addition, Roberson has moved to dismiss the complaint on the grounds that it fails to state a claim of personal liability against him.

Callahan has opposed these motions, which she contends should be treated as motions for summary judgment. In addition, she has filed a cross-motion for summary judgment seeking the entry of judgment in her favor "on all counts and claims." (Docket # 14).

This court recommends that both defendants' motions to dismiss be ALLOWED due to lack of personal jurisdiction. In addition, should the issue be reached, the plaintiff's motion for summary judgment should be DENIED as there are significant material facts in dispute.

## II. *STATEMENT OF FACTS*

The parties have submitted affidavits and other exhibits in connection with the defendants' motions to dismiss and plaintiff's cross-motion for summary judgment. Although the plaintiff's motion relates to the merits of the case, she has requested that the exhibits thereto be considered on the jurisdictional issues. Both sides have challenged the others' submissions.[1]

The consideration of materials outside the complaint is appropriate in rul-

---

1. This court previously has ruled on several motions relating to information being provided in connection with the dispositive motions. With respect to the pending motions: (1) defendants' requests in their briefs (Docket # 23, # 25) that this court strike portions of the affidavits of Neal Marshall Brown and the plaintiff are DENIED; (2) plaintiff's "Motion to Strike Defendants' Affidavits (all of them) and Exhibit (Alleged Contract) Filing and 11–17 2000 Motion and Memorandum" (Docket # 28) is DENIED; (3) this court will accept for consideration the *factual* information provided by the plaintiff in the "Notice on Web Site Jurisdiction" (Docket # 40), "Notice Re: New Execution, and Re: Cheverie's ties to Mass sic Mass "resident" et al" (Docket # 42), and "Plaintiff's: Notice of Proof of Fraud (Cheverie not an Officer Director, Paragraph 4–Fraud: Missouri separate extinguished Co. vis a vis Deleware Incarnation) et al and Motion to Enter Judgment." (Docket # 41). That portion of this pleading which is entitled "Motion to Enter Judgment" (Docket # 41) is duplicative of issues raised in the plaintiff's cross-motion for summary judgment, and will not be addressed separately.

ing on a motion to dismiss for lack of personal jurisdiction. *See Topliff v. Atlas Air, Inc.,* 60 F.Supp.2d 1175, 1176 (D.Kan. 1999); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994). This court has declined to strike any of the challenged submissions, but will consider them under the following framework:

On a motion to dismiss for want of in personam jurisdiction, Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists .... In conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim .... We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted .... We caution that, despite the liberality of this approach, the law does not require us struthiously to credit conclusory allegations or draw farfetched inferences.

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998) (case citations and quotations omitted). As part of this analysis, the court does not act as a fact finder. Rather, the court must determine "whether the facts duly proffered [when] fully credited, support the exercise of personal jurisdiction." *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 84 (1st Cir.1997). However, "allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." *Barrett v. Lombardi,* 239 F.3d 23, 27 (1st Cir.2001), and cases cited. Moreover, the plaintiff, as a pro se litigant, is not entitled to a measure of latitude since she is a lawyer. *Id.* at 28, and cases cited. Applying these standards to the instant case, the follow-ing facts are relevant to the issues before this court.

### The Parties

The plaintiff, Elaine Callahan, a Massachusetts resident, was formerly an attorney for Carroll ("Roy") L. Cheverie, Jr., a merchant banker. (*See* Amended Verified Complaint ("Compl.") ¶¶ 2, 7). The plaintiff alleges that Cheverie was a co-founder, officer and director of a Delaware corporation, Harvest Board International, Inc., whose offices were once located in Missouri, but are now located in Kansas. (Compl.¶ 8). Harvest Board International, Inc., a Delaware corporation ("Harvest Board–Delaware"), was incorporated on or about April 28, 1997. (Roberson Aff. ¶ 4; Hulsoff Aff. ¶ 4). There is also a corporate entity known as Harvest Board International, Inc., which is a Missouri corporation ("Harvest Board–Missouri"). (*Id.* at ¶¶ 5, 5). Harvest Board–Missouri was formed on or about June 27, 1995 as McNeil & Co., Inc., but its name was changed to Harvest Board on November 28, 1995. (*Id.* at ¶¶ 6, 6). The relationship between Harvest Board–Delaware and Harvest Board–Missouri is unclear. The defendants collectively refer to them as "Harvest Board" as will this court, except where the distinction is relevant to this court's analysis.

The terms of Cheverie's employment with Harvest Board are in dispute. The plaintiff has submitted evidence which indicates that Cheverie was an officer (president) and director of Harvest Board. (*See* Pl. Summ. J. Exs. 12, 14, 15A). The defendants contend that Cheverie performed services for Harvest Board as an independent contractor pursuant to a Management Financial Consulting Services and Merchant Banking Agreement between Harvest Board and Cheverie & Company International Limited, a company owned by Cheverie. (*See* Roberson Aff. ¶ 10; Hul-

soff Aff. ¶ 9; Second Hulsoff Aff. Attach. A, ¶ 10). I accept as true for purposes of the motions to dismiss plaintiff's assertions of fact regarding Cheverie's position. Nevertheless, Cheverie was not responsible for the day-to-day operations of Harvest Board. (*See* Brown Aff. ¶ 8). Rather, Cheverie was to assist Harvest Board in raising money, developing financial markets strategy, and recruiting employees. (*Id.*). The location out of which he worked apparently was discretionary. (*See* Compl. ¶ 11).

### The Promissory Notes

This action arises out of six "demand" promissory notes issued by "Harvest Board International Inc." to Cheverie from January 31, 1997 through May 30, 1997.[2] Although the state of incorporation of the maker is not identified, Harvest Board–Delaware did not come into existence until April 28, 1997. Harvest Board had offices in Missouri at the time the notes were issued, and did not have any offices then (or now) in Massachusetts. (*See* Roberson Aff. ¶ 8; Hulsoff Aff ¶ 7; Compl. ¶ 8). It is undisputed that the notes were issued in Missouri, and that Cheverie maintained a residence in Kansas City, Missouri at that time. (Compl. ¶ 11; Hulsoff Aff. ¶ 18). Each note provides that it:

> shall mature and any amount of principal or interest then outstanding shall be due and payable on demand by the lawful holder hereof.... Payment shall be made to Payee at such place as the holder hereof may designate.... Maker hereby expressly waives demand, presentment, protest and notice of protest and notice of dishonor with respect to this Note.

(Exs. to Compl. 1–6). The defendant, Roberson, the Senior Vice–President of Finance and Administration and a director of Harvest Board–Delaware, is not listed as a maker or guarantor on the notes and was not employed by Harvest Board at the time the notes were issued. (Roberson Aff. ¶¶ 3, 20, 21, 22).

### Massachusetts Contacts Of The Defendants

At issue is whether the defendants have sufficient contacts with the Commonwealth of Massachusetts to support a finding of personal jurisdiction. Roberson is a Kansas resident. (*Id.* at ¶ 23). He has never resided in Massachusetts and has never conducted business here. (*Id.* at ¶ 24). Roberson does not own property in Massachusetts and has not consented to being sued in the Commonwealth. (*Id.* at ¶ 25).

Harvest Board never had offices in Massachusetts. (Roberson Aff. ¶ 8; Hulsoff Aff. ¶ 7). The only contacts Harvest Board had with Massachusetts are contacts which can be imputed to it through the work performed by Cheverie and possibly other personnel. Consequently, those contacts will be examined in detail.

Cheverie's initial contacts with Harvest Board took place in Missouri, and the notes were issued there. There is no evidence that the notes were negotiated in Massachusetts.

Prior to November 1997, Cheverie lived in Florida. (Brown Aff. ¶¶ 5–6). Beginning in November 1997, Cheverie began spending a great deal of time in Massachusetts in connection with preparing his defense of and trying litigation in this court: *Joseph C. Austin, et. al. v. Carroll L. Cheverie Jr., et. al.,* Civil Action No. 90–

---

2. The six promissory notes attached to the complaint are as follows: Ex. 1 = $36,800 note dated May 30, 1997; Ex. 2 = $25,000 note dated January 31, 1997; Ex. 3 = $20,000 note dated February 28, 1997; Ex. 4 = $20,000 note dated March 31, 1997; Ex. 5 = $17,500 note dated April 30, 1997; Ex. 6 = $17,500 note dated May 30, 1997.

11648. (Roberson Aff. ¶ 16, Hulsoff Aff. ¶ 15, Brown Aff. ¶ 6). This litigation was not related to the current case except that plaintiff's claim for fees against Cheverie arose from her position as co-counsel in that litigation. According to Cheverie's lead attorney in the *Austin* case, Neal Marshall Brown, Cheverie stayed with Attorney Brown and used office space in his attorney's office in Massachusetts from November 1997 through April 1998. (Brown Aff. ¶ 6). There is no evidence that Cheverie had his own office, or even an apartment in Massachusetts.[3] Cheverie's stay in Massachusetts was for his own convenience, and was not at the request of or for the benefit of Harvest Board. (Roberson Aff. ¶¶ 16,17; Hulsoff Aff. ¶¶ 15, 16).

Attorney Brown attests that prior to November 1997, Cheverie maintained a residence in Florida. (Brown Aff. ¶ 5). Attorney Brown recalls that at one point prior to November 1997, Cheverie came to Massachusetts to conduct interviews on behalf of Harvest Board, which he remembers being told by Cheverie were with Messrs. Eberle and Bujold, who were hired into executive positions for Harvest Board. (*Id.*). He also attested that he was told by defense counsel in this case that this court lacked diversity jurisdiction because one of Harvest Board's officers

and directors, Eberle, lives in Boston and "he conducted work for Harvest Board out of his home." (Brown Aff. ¶ 17).[4] No further details of the work Eberle allegedly did for Harvest Board are provided.

The documentary evidence submitted by the plaintiff does not support a conclusion that Messrs. Bujold and Eberle established a Harvest Board presence in this Commonwealth. For example, the Articles of Incorporation of Harvest Board submitted by the plaintiff have included with them a tax document which gives Mr. Bujold's address as Weld, Maine, and a list of directors which includes Mr. Bujold with Weld, Maine and North Palm Beach, Florida addresses. (Pl. Summ. J. Ex. 14 at pp. 45, 46). On August 23, 1999, Attorney Brown himself sent Messrs. Bujold (as Chief Executive Officer) and Eberle (as Chairman of the Board) a demand letter addressed to them at Harvest Board in Kansas. (Compl.Ex. 9).

The plaintiff has also submitted a document which indicates that Cheverie interviewed *Roberson* for an executive position prior to November 1977. Thus, there is a letter dated September 22, 1997 from Roberson, at a Kansas address, to Cheverie at Harvest Board, at a Missouri address, confirming Roberson's employment as "Executive Vice President" beginning Oc-

---

**3.** While plaintiff has submitted a "web site" for Cheverie which gives a Massachusetts and Florida phone number for him, the site purports to be current as of 1995 and sheds no light on the status of events in 1997. (Pl. Summ. J. Ex. 14 at p. 113). Moreover, the website makes no mention of any relationship between Cheverie and Harvest Board so it adds nothing to the analysis of the defendants' contacts with Massachusetts.

**4.** Callahan asserts that she dropped officers as defendants in the instant case based on this alleged representation to Brown, so as to maintain diversity. (Pl. Opp'n to Def. Mot. to Dismiss at p. 6; Pl. Mem. in Supp. of Cross-

Mot. for Summ. J. at p. 19). She further asserts repeatedly that Harvest Board and/or its counsel should be penalized because, having somehow forced her to drop the potential defendant(s), Harvest Board is now claiming that it lacks sufficient contacts with Massachusetts to be sued here. This argument is not persuasive. If Callahan intended to sue Eberle individually, and he was a Massachusetts resident, diversity would be destroyed. Even if he were a Massachusetts resident, however, that would not automatically mean that Harvest Board's presence in the Commonwealth was sufficient to support a finding of jurisdiction.

tober 1, 1997. (Pl. Summ. J. Ex. 13 at p. 37). Nothing related to this hiring appears to have taken place in Massachusetts.

The listing of directors submitted by the plaintiff which appears to be an exhibit to the original incorporation papers filed in April 1997 lists Cheverie's address as Fort Lauderdale, Florida. (Pl. Summ. J. Ex. 13 at pp. 46 and 47). The Certificate of Incorporation itself dated April 28, 1997 lists all initial directors, including Cheverie, with a Kansas City, Missouri address. (Pl. Summ. J. Ex. 14 at p. 42). Thus, crediting all the evidence submitted, at most Cheverie was present in Massachusetts to interview someone for Harvest Board before he started to live with his lawyer in November 1997, after the notes at issue had been executed.

According to Attorney Brown, after November 1977, when Cheverie was not working on his own case, Brown observed him doing some work on behalf of Harvest Board from Brown's office. Specifically, Attorney Brown describes these contacts as follows:

> During the time that he was working for Harvest Board out of my Hingham office I observed Mr. Cheverie doing work on Harvest Board financing including raising of capital and engaging in efforts at recruiting personnel for Harvest Board. I also observed him use my phones to conduct Harvest Board work. I also saw him communicate back and forth with other Harvest Board personnel. I also observed Mr. Cheverie both receive and send out Harvest Board work to Harvest Board and Third Parties by fax and by mail. Mr. Cheverie maintained "Harvest Board" files in my office suite in Hingham, Massachusetts. I also observed that he received finan-

cial documents from Harvest Board— including materials (in January, 1998) from the Chief Financial Officer of Harvest Board instructing Mr. Cheverie to complete financial information form (regarding the same Promissory Notes that are in dispute in this case) and to send them back to the Harvest Board auditors. Also, Mr. Cheverie authorized me to, and I did, enter into settlement negotiations with Harvest Board representatives (executives and/or Harvest Board lawyers). Numerous telephone calls and written communications between myself in Hingham and Harvest Board's counsel took place.

(Brown Aff. ¶ 8). The "financial documents" Attorney Brown refers to are letters requesting that Cheverie (individually) confirm information relating to the promissory notes for Harvest Board's auditors. (*Id.;* Pl. Summ. J. Ex. 15). These letters, which have been submitted by the plaintiff, do not contain an address for Cheverie. (Pl.Summ. J. Ex. 15).

Although the date is unclear, it is undisputed that Cheverie's employment with Harvest Board International was eventually terminated.[5] (Compl.¶ 12). In June 1998, Cheverie was severely injured in an automobile accident (seemingly in Florida) which left him in a coma from which he did not recover. (Brown Aff. ¶ 9). On November 7, 1998, Cheverie died from injuries suffered in the automobile accident. (Brown Aff. ¶ 3).

### Plaintiff's Title To The Notes

On October 14, 1998, apparently while Cheverie was in a coma, Callahan commenced suit against him for legal fees in the Massachusetts Superior Court in the matter of *Elaine M. Callahan v. Carroll L.*

---

**5.** In her memorandum, Callahan states that the parting of the ways came at the end of

January 1998. (*See* Pl. Mem. in Supp. of Opp'n (Docket # 17) at p. 4).

("Roy") Cheverie (Defendant) and Neil Marshall Brown (Trustee–Defendant), Middlesex Superior Court, Civil Action No. 98–5118. The Verified Complaint and Amended Verified Complaint in that matter, both signed by Callahan herself, alleged that Cheverie resided in Fort Lauderdale, Florida. (Def. Mot. for Judicial Notice Exs. B, C). On November 12, 1998, several days after Cheverie's death, Callahan moved for a default for failure to respond. (*Id.* at Ex. D). Callahan filed a notice with the Superior Court asserting that Cheverie "did have an address in Florida where he was staying at the time of service of the complaint" and that his wife lived there too. (*See* "Notice Re: New Execution, and Re: Cheverie's ties to Mass sic Mass "resident" et al" (Docket # 42) at Ex. 4: "Notice to Court on Categorizing Address but not Affecting Service or Judgment(s)"). Callahan obtained a judgment against Cheverie and his wife, as representative of his estate, nunc pro tunc as of October 26, 1998 in the amount of $264,461.00. Callahan then obtained an execution on the promissory notes from Harvest Board to Cheverie, which were being held in trust by Attorney Brown.[6] (Pl. Summ. J. Ex. 17 at p. 63; Def. Mot. for Judicial Notice Ex. A). Callahan then hired Brown to represent her in collecting the notes. (Compl.¶ 17).

By letter dated August 23, 1999, Callahan, through her attorney, Brown, made a demand for payment on Harvest Board in Kansas on the notes listed in the execution payable to Cheverie individually (Compl.Ex. 9). In a letter sent from Harvest Board to Brown in Massachusetts dated September 16, 1999, Roberson stated that Harvest Board has "no documentation that Roy [Cheverie] passed away," "no

documentation or proof that Elaine M. Callahan has possession of the original notes," or "proof that Ms. Callahan has a successor interest in the notes." (Compl.Ex. 10). Callahan does not challenge the propriety of these claims and asserts that she provided the information in exhibits to the complaint. (Mem. in Supp. of Cross Mot. at 10). The letter also stated that "[t]he notes are with Harvest Board International, Inc. (a Missouri corporation) which has been dissolved, leaving no assets and holding significant liabilities. There can be no claim against HBI (a Delaware corporation) since it was not in existence at the time the notes were made." (*Id.*). Callahan alleges that the companies are the same and that the defendants have engaged in a scheme to defraud predecessor Cheverie and Callahan of the benefits of the notes. (Compl.¶¶ 21, 24). The letter concludes with the statement "[i]f you have any questions, please feel free to write once again." (Compl.Ex. 10).

## III. DISCUSSION

### A. Standard For Personal Jurisdiction

■■■■ A plaintiff confronted with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) bears the burden of persuading the court that jurisdiction exists. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998), citing cases. "In a diversity case, personal jurisdiction over a nonresident defendant is constrained both by the long-arm statute of the forum state and the Due Process Clause of the Fourteenth Amendment." *Lyle Richards Int'l v. Ashworth, Inc.*, 132

---

**6.** Inspection of the documents from Callahan's action against Cheverie reveals that the notes in the execution are not all the same as the notes attached to the Amended Verified

Complaint in this action. Two of the notes Callahan is purporting to sue on were not levied upon. (*See* Notice Re: New Execution (Docket # 42) at ¶ 2).

F.3d 111, 112 (1st Cir.1997), citing cases. "Compliance with the federal constitutional standard involves a somewhat more extensive showing" than compliance with the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3. *Barrett v. Lombardi,* 239 F.3d 23, 26 (1st Cir.2001). Where, as here, the assertion of personal jurisdiction would offend due process, there is no need to address whether the exercise of jurisdiction would be appropriate under the Massachusetts long-arm statute. *See Noonan v. Winston Co.,* 135 F.3d 85, 90 (1st Cir.1998), and cases cited.

**B. *Constitutional Due Process***

■ "The Due Process Clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a nonresident defendant only when the defendant has sufficient minimum contacts with the forum." *Id.* In analyzing minimum contacts, courts have recognized that jurisdiction can be either specific or general. *See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum based activities, such as when the litigation itself is founded directly on those activities." *Mass. Sch. of Law,* 142 F.3d at 34. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity unrelated to the suit, in the forum state." *Id.* (quotation omitted).

**1. *General Jurisdiction—Harvest Board and Roberson***

■ This court would have general jurisdiction over the defendants if their "contacts are 'sufficiently continuous and systematic' that the assertion of jurisdic-

tion is 'reasonable and just.'" *United States v. Swiss Am. Bank Ltd.,* 116 F.Supp.2d 217, 223 (D.Mass.2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "The standard for evaluating whether contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." *Noonan,* 135 F.3d at 93 (internal quotations and citations omitted).

■ There is no question that this court cannot assert general personal jurisdiction over Roberson individually. His sole contact with Massachusetts is the signing of a letter on behalf of Harvest Board which was sent to Attorney Brown. Such a contact is not "continuous and systematic" and is insufficient to support the assertion of general jurisdiction.

■ Similarly, Harvest Board's limited contacts with the Commonwealth are insufficient to establish general jurisdiction. Cheverie did some work for Harvest Board during a limited period of time out of Attorney Brown's office, while substantially engaged in preparing the defense of other litigation. Even while working in Massachusetts, Cheverie did not establish a formal office for Harvest Board in the Commonwealth, and did not use stationery or the like linking Harvest Board to Massachusetts. There is no evidence that Harvest Board solicited business from Massachusetts residents. It never incorporated in Massachusetts, never owned property in Massachusetts, and did not generate income from Massachusetts. Thus, Harvest Board's few isolated contacts are insufficient to establish general jurisdiction over the company in Massachusetts. *See, e.g., Noonan,* 135 F.3d at 92–94 (two year business relationship during which out of state seller regularly received and solicited business from

a Massachusetts company insufficient for purposes of general jurisdiction); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 215, 217 (1st Cir.1984) (manufacturer who advertised, employed eight sales representatives to distribute information and sold products to distributors in forum was not subject to general jurisdiction); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 470–71 (1st Cir.1990) (where defendant league had no "continuous and systematic general business contacts" with the forum, no jurisdiction).

 Finally, the plaintiff has asked this court to take judicial notice of Harvest Board's website, without providing an address (Docket # 40), and seems to argue that the website confers jurisdiction over this defendant. As an initial matter, this type of information is not appropriately brought to the court's attention by way of judicial notice. The court was not provided with Harvest Board's website or the date on which the plaintiff "discovered" the website. *See* Fed.R.Evid. 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information"). Furthermore, the defendants object to the court taking notice of "website jurisdiction." Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute . . . ."). Nevertheless, this court has located a website at *http://www.harvestboard.com* which makes no mention of any ties between the company and Massachusetts, and is not an interactive site which solicits business in the Commonwealth. The mere existence of a website is insufficient to establish jurisdiction. *See N. Light Tech. v. N. Lights Club*, 97 F.Supp.2d 96, 106 (D.Mass. 2000), and cases cited, *aff'd on other grounds*, 236 F.3d 57 (1st Cir.2001). *See also Dagesse v. Plant Hotel, N.V.*, 113 F.Supp.2d 211, 223–24 (D.N.H.2000) (website alone does not constitute "deliberate,

continuous and systematic activity" in the forum state to satisfy due process requirements).

### 2. Specific Jurisdiction

 In determining whether sufficient minimum contacts exist for specific jurisdiction, the court must ask (1) whether the claim at issue arises out of or is related to the defendants' conduct within the forum state; (2) whether the defendants' contacts with the forum state represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of the state's laws and making the defendants' involuntary presence before the state's courts foreseeable; and (3) whether it is fair and reasonable to compel the defendants to defend themselves in Massachusetts. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir.1999), citing cases. "An affirmative finding on each of the three elements of the test is required to support a finding of jurisdiction." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir.1999). Moreover, each cause of action must be analyzed separately, since the elements of contract and tort claims differ significantly. *Id.* at 289.

### a. Contract Claims—Harvest Board

The crux of plaintiff's claim is that Harvest Board breached its contracts with Cheverie, and Callahan as holder of the promissory notes, by failing and refusing to pay the amounts plaintiff claims are due under the notes. I find that this court cannot assert specific jurisdiction in connection with this claim.

### (1) Relatedness

 The breach of contract claim does not arise out of and is not related to Harvest Board's conduct within Massachu-

**160**

setts. In evaluating contacts related to the contract claim, the court examines whether the defendant's forum based activities are instrumental in the formation or the breach of the contact. *See Mass. Sch. of Law,* 142 F.3d at 35 (citations and quotations omitted). The "relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Phillips Exeter Acad.,* 196 F.3d at 290 (citation omitted).

■ Here, the notes themselves bear no relationship to Massachusetts: they were not negotiated in Massachusetts, and they are not controlled specifically by Massachusetts law. *See Mass. Sch. of Law,* 142 F.3d at 35 (in a contract claim, "our stereotypical inquiry tends to ask whether the defendant's forum-based activities are 'instrumental in the formation of the contract' ") (citations omitted). The notes are payable anywhere and, therefore, the situs of payment does not evidence any intent that the Commonwealth was significant to the parties contractual relationship. *See Phillips Exeter Acad.,* 196 F.3d at 291, and cases cited (while place of payment may be significant in contract claim, it is not controlling). The decision not to pay the notes was made in Missouri or Kansas. In short, plaintiff's breach of contract claim simply does not relate to any conduct of Harvest Board in the Commonwealth of Massachusetts.

### (2) *Purposeful Availment*

Assuming, *arguendo,* that Harvest Board's conduct met the "relatedness" test, "the lack of purposeful availment nev-

ertheless would defeat jurisdiction." *Phillips Exeter Acad.,* 196 F.3d at 291. In evaluating this element, the court must determine whether the defendant's contacts with Massachusetts "represent a purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before the Massachusetts court foreseeable." *Mass. Sch. of Law,* 142 F.3d at 36 (internal quotations and citations omitted); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 207 (1st Cir.1994) (the two focal points of purposeful availment are foreseeability and voluntariness). "The function of the purposeful availment requirement is to assure that jurisdiction is not premised solely upon a defendants random, isolated, or fortuitous contacts with the state." *Sawtelle v. Farrell,* 70 F.3d 1381, 1391 (1st Cir.1995) (citations and internal quotations omitted).

■ Significantly, at the time the contracts were created, Harvest Board had no contacts with Massachusetts. Similarly, by the time Callahan obtained title to even some of the promissory notes, Cheverie was deceased. He had left the Commonwealth in April 1998, almost a year and a half before the demand letter sent by Attorney Brown on behalf of Callahan (dated August 22, 1999). Thus, during these significant periods of time, there is no evidence that Harvest Board had any presence in Massachusetts, much less that it purposely availed itself of doing business here.[7]

Even if this court considers the period of time Cheverie was doing work out of Attorney Brown's office, the facts do not

---

7. The general assertion that Attorney Brown was told that another director was working out of his Massachusetts home is insufficient to meet plaintiff's burden of proof, even ignoring the hearsay status of the evidence. (Brown Aff. ¶ 17).

support a conclusion that Harvest Board invoked the benefits and protections of the laws of the Commonwealth so as to make its presence before this court here foreseeable. Cheverie chose a base of Massachusetts because he was being sued here in unrelated litigation. He worked out of his attorney's office in between preparing his own case. The work apparently could be done anywhere, including Florida, where Cheverie lived for at least part of the time he was employed by Harvest Board. The transient contacts with Massachusetts are insufficient to support a conclusion of jurisdiction.

To this end, the case of *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111 (1st Cir.1997) is instructive. In that case, Lyle, a Massachusetts company, was the defendant's purchasing agent pursuant to a contract which Lyle signed in Massachusetts and then sent to the defendant for execution in California. *Id.* at 112. While Lyle was based in Massachusetts, it had no specific contractual obligations here. *Id.* The defendant California company would periodically send purchase orders to Lyle in Massachusetts, which would then be transmitted to third persons. *Id.* In addition, the defendant would communicate with Lyle several times a week regarding contract issues and, from time to time, would direct customers to bill Lyle directly in Massachusetts. *Id.*

When its contract was terminated by the defendant, Lyle sued for breach of contract in Massachusetts. The First Circuit concluded that there were insufficient contacts on the part of the defendant with the Commonwealth to satisfy the requirements of the "transacting business" test under the Massachusetts long-arm statute. *Id.* at 113. Under that test, similar to the due process standard, the court must determine whether "the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable." *Id.* at 112–13, citations omitted.

The factors the *Lyle* court relied on are equally persuasive here. In *Lyle*, the defendant did not initiate or solicit the business transaction in Massachusetts. *Id.* at 113. Here, Harvest Board did not come to Massachusetts in connection with its relationship with Cheverie. Rather, Cheverie, who started off in Florida and Missouri, ended up in Massachusetts for a period of time. In *Lyle*, as in the instant case, there was no requirement that any business of the defendant be conducted in Massachusetts. *Id.*[8] In *Lyle*, the court concluded that the "purely incidental contacts here were insufficient to support an assertion of personal jurisdiction" over the defendant. *Id.* The same result should be reached here. *See also Phillips Exeter Acad.*, 196 F.3d at 292 ("[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship—say, by solicitation ...—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day") (citation omitted); *Noonan*, 135 F.3d at 92–94, and cases cited (where sales efforts in Massachusetts not intense, active or frequent, no general jurisdiction). "Because there is insufficient evidence in the record to find that [Harvest Board], through its own affirmative conduct, purposefully availed itself of the privilege of conducting activities in Massachusetts such that it could reasonably anticipate being hailed into court there, the

---

**8.** The facts of the instant case are, therefore, clearly distinguishable from *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 625 N.E.2d 549 (1994), on which plaintiff relies. In *Tatro*, the defendant hotel actively solicited and obtained meeting and convention business from at least 10 Massachusetts businesses and engaged in a "quite extensive solicitation of business in Massachusetts." 416 Mass. at 773, 625 N.E.2d at 554.

district court [lacks] direction jurisdiction over [Harvest Board] based upon ... contacts with the commonwealth." *United Elec., Radio & Mach. Workers*, 960 F.2d at 1090–91.

Finally, plaintiff's argument that by sending a response to Attorney Brown's demand letter to Attorney Brown in Massachusetts, the defendants subjected themselves to this court's jurisdiction must fail. A similar claim was raised and summarily rejected in *Lyle*, where the sending of the termination notice to Lyle in Massachusetts was insufficient to impose jurisdiction over the defendant. 132 F.3d at 112, n. 2. The sending of the response letter cannot constitute the solicitation of business here, and thus does not result in this court having personal jurisdiction over the defendant. *See also Sawtelle*, 70 F.3d at 1389–90 (mailing of letters into forum conveying information insufficient to establish jurisdiction where decisions made elsewhere).

### (3) *Reasonableness*

Since the plaintiff has failed to satisfy the first two elements of the specific jurisdiction test, no further analysis of the contract claim is necessary. If, however, further inquiry is made on the final element, reasonableness, the conclusion would remain the same.

■■■■■ In assessing reasonableness, the court focuses on what have been called the "Gestalt factors," that is: "(1) the defendants' burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Ticketmaster–New York*, 26

F.3d at 209. In *Ticketmaster*, the First Circuit explained:

> The gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance.

*Id.* at 209. Moreover, the reasonableness inquiry is thought to be applied as a "sliding scale," "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need to show in terms of unreasonableness to defeat jurisdiction." *Id.* at 210. "The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Id.*

■■■■ Obviously, it would be a burden for Harvest Board to appear in Massachusetts where it has no contacts. However, "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir.1994), *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995). "[T]his factor is only meaningful where a defendant can demonstrate some kind of special or unusual burden." *Id.* (travel between New York and Puerto Rico was not special or unusual burden). Aside from cost and inconvenience, Harvest Board has not alleged a special or unusual burden, though this court notes that the burden on Roberson, individually, would be greater. The burden to appear is not a controlling factor in this case one way or the other.

Massachusetts has no special interest in adjudicating the dispute. The most effective resolution of the controversy would not necessarily take place in Massachusetts. The facts relating to the promissory notes and the formation of the contracts would be found in Missouri or Kansas, so that it may not be in the plaintiff's best

interest in litigating the case here either. However, the facts relating to how Callahan acquired title to the notes would most likely be found in Massachusetts, although some inquiry may have to be made in Florida. This case does not involve substantial social policies. All in all, applying the Gestalt factors leads to the conclusion that there is no reason to have the case tried in Massachusetts. Moreover, given the weak showing the plaintiff made on relatedness and purposeful availment, the exercise of jurisdiction by this court would be unfair.

#### b. *Contract Claims—Roberson*

■ For the same reasons which defeat jurisdiction over Harvest Board, the plaintiff has not asserted facts which would support the exercise of jurisdiction over Roberson individually on the breach of contract claim. In addition, although in certain circumstances, "a high corporate officer may be personally liable for the torts a corporation commits at his direction ... the officer ordinarily is not liable for the corporation's breach of contract." *Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 11 (1st Cir.1986) (citations omitted). Roberson did not sign or guarantee the promissory notes. Thus, not only does this court lack personal jurisdiction over Roberson on the contract claim, but Roberson's motion to dismiss on the grounds that this count of the complaint fails to state a claim against him should be allowed under Fed.R.Civ.P. 12(b)(6) as well. *Id.* at 11–12 (no liability of corporate officer for company's breach of contract).

#### 3. *Tort Claims—Harvest Board and Roberson* [9]

Plaintiff's tort based claims for fraud (Count III) and negligence (Count IV), as well as her claim under c. 93A, all are based on Harvest Board having taken the position in its September 1999 letter to Attorney Brown that Cheverie's notes were with a different company, Harvest Board–Missouri. Specifically, Callahan asserts that Harvest Board and Roberson falsely stated in the September 16, 1999 response to Attorney Brown's demand letter that the maker of the notes (Harvest Board–Missouri) no longer existed while, in fact, the existing Harvest Board is the successor in interest to the maker. (Compl.¶¶ 19–22). Callahan contends that the defendants' assertion was blatantly fraudulent as evidenced by the fact that the stationery used to send the letter refers to the company as "Harvest Board International" and that in January 1998 Harvest Board had asked Cheverie to confirm the existence of the promissory notes. (*See* Mem. in Supp. of Pl. Cross Mot. for Summ. J. (Docket # 15) at 6, 14–15). Callahan claims to have been damaged by the defendants' conduct in the amount due under the promissory notes. (*See id.* at ¶ 4 p. 3 (List of Material Facts of Record—harm caused by "tortious denial" of liability was deprivation of the funds due and owing from Harvest Board); p.14 (harm caused was misappropriating funds due under the notes); Compl. ¶ 39 (93A damages is amount due under notes trebled); ¶ 51 (same regarding damages in negligence claim)). Finally, Callahan alleges without any substantiating facts that "Plaintiff, and/or predecessor in interest, did in fact reasonably rely upon the misrepresentations of the Defendant(s)." (Compl.¶ 43).

#### a. *Personal Jurisdiction*

■ As detailed below, this court believes that the claims based on the Sep-

---

**9.** Since a corporate officer can be personally liable for torts committed at his direction, the analysis of these claims against Harvest Board and Roberson are the same.

tember 1999 letter fail to state a claim, and can be dismissed on those grounds. However, there is no need to reach the merits of the claims since there is no personal jurisdiction over Harvest Board or Roberson.

 When evaluating the contacts related to the tort-based claims, the court must examine the causal nexus between the defendant's contacts and the plaintiff's cause of action. *Phillips Exeter*, 196 F.3d at 289. Thus, "we customarily look to whether the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum state activity) and legal cause (i.e., the defendant's in state conduct gave birth to the cause of action)." *Mass. Sch. of Law*, 142 F.3d at 35 (quotations omitted). Plaintiff relies on those cases, most particularly *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661 (1st Cir.1972), which have found that the act of sending a fraudulent misrepresentation into Massachusetts may be sufficient to establish jurisdiction. Those cases, however, are distinguishable.

As an initial matter, the plaintiff's harm did not arise out of the letter sent to Massachusetts. Rather, the harm, if any, arose out of Harvest Board's decision not to pay the notes. As evidenced by Callahan's allegations of identical damages in her tort and contract claims, her damage is that she has not been paid under the notes. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir.1999) ("the legal injury occasioned by the tort of conversion is deemed to occur when the actual conversion takes place"). Thus, the defendants' forum-related activity in sending the letter into Massachusetts does not satisfy the "relatedness" requirement of jurisdiction.

Moreover, the record does not support a finding that the defendants purposefully availed themselves of the benefits of doing business in Massachusetts. In *Murphy*, on which the plaintiff relies, the defendant intentionally initiated a transaction with a Massachusetts resident. In the present case, the defendants were responding to a letter which happened to be sent by a Massachusetts resident. The distinction is significant.

*Murphy* was decided under § 3(c) of the Massachusetts long-arm statute, which grants the courts jurisdiction over parties who cause "tortious injury by an act or omission in the commonwealth." The plaintiff Massachusetts resident was an advertising consultant who entered into a business relationship with the out of state defendant Erwin–Wasey, an advertising agency. *Murphy*, 460 F.2d at 662. The plaintiff claimed that "false statements have been made by letter and orally both face to face and in telephone conversations while I was in Massachusetts and elsewhere." *Id.* at 663. The court concluded that where a defendant "knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of the resident of that state, he has, for jurisdictional purposes, acted within that state." *Id.* at 664. Moreover, due process requirements were satisfied because the sender "purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citation omitted). Significantly, the *Murphy* court doubted that the sending of a single payment into Massachusetts would satisfy due process requirements. *Id.* at 665.[10]

---

**10.** Although courts have found that there is no constitutional prohibition to basing jurisdiction upon a single, isolated tort committed by a foreign corporation in Massachusetts, against a Massachusetts resident, *see, e.g., Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978,

Under the facts of the present case, the defendants did not purposefully avail themselves of the privilege of conducting business in Massachusetts. As detailed above, jurisdiction may not rest on the "unilateral activity of another party or at third person," and the contacts by the defendant must be voluntary. *Ticketmaster–New York, Inc.*, 26 F.3d at 207–208 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). No such finding can be made here where the sole communication at issue was not even initiated by the defendants. *See Ticketmaster*, 26 F.3d at 207–209, 212 (no personal jurisdiction over California resident who made a derogatory comment during an unsolicited telephone interview with a Massachusetts newspaper reporter); *Phillips Exeter Academy*, 196 F.3d at 292 and cases cited (payments sent to New Hampshire insufficient to establish personal jurisdiction over out of state defendant; no voluntary contact with New Hampshire where defendant did not initiate relationship, and defendant did not benefit from contacts with state to make jurisdiction foreseeable). Since the plaintiff failed to satisfy either the relatedness or purposeful availment elements of the personal jurisdiction analysis, the defen-

dants' motions to dismiss should be allowed.[11]

#### b. *Viability of Tort Claims*

■■■■ Finally, this court should not exercise jurisdiction over the tort claims and 93A claims because they fail to state a claim. A court cannot base its exercise of jurisdiction on claims which are not viable. *See, e.g., Murphy*, 460 F.2d at 664–65 (where there clearly was no reliance on alleged deceptive statement, jurisdiction cannot be based on that claim); *Lyle*, 132 F.3d at 114–15 (no personal jurisdiction where complaint fails to state a claim under ch. 93A). This analysis is particularly appropriate where, as here, the plaintiff has moved for summary judgment on all counts of the complaint, thereby raising the issue of the sufficiency of the evidence. (Pl. Cross Mot. for Summ. J. (Docket # 14)). Moreover, the defendants have challenged the sufficiency of the pleadings on several grounds, including whether fraud is pleaded with particularity, whether the 93A claim is based on transactions occurring primarily in the Commonwealth and whether the complaint states a claim of individual liability of Roberson. (*See* Def. Roberson's Mem. in Supp. of Mot. to Dismiss (Docket # 10); Def. Harvest Board International, Inc.'s Mem. in Supp. of Mot. to Dismiss (Docket # 8)).[12]

983 (1st Cir.1986), under the facts of the present case the plaintiff cannot satisfy the due process requirements.

11. The reasonableness analysis would be the same for the tort claims as for the contract claims.

12. While the lack of personal jurisdiction can end the inquiry, if further analysis is undertaken, this court recommends that Roberson's motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) be allowed. Further, summary judgment can be entered in favor of the non-moving parties. *See National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133–34 (1st Cir.1987) (where

party moving for summary judgment had adequate opportunity to show genuine issue with regard to its contract claim and provided court with all its factual material, court properly sua sponte granted partial summary judgment in favor of non-moving party which did not file formal cross-motion for summary judgment); *Quaker State Oil Refining Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1513–14 (1st Cir.1989) (affirming district court's decision which granted summary judgment sua sponte because refusal to pay invoice and debt on promissory notes without more was not sufficient to constitute a 93A violation). This may be appropriate on the ch. 93A and tort claims where no facts are in dispute. The existence of disputed facts on the contract

As an initial matter, it is far from clear that the letter sent by Harvest Board was, in fact, inaccurate. Most, if not all, of the promissory notes must have been made with Harvest Board–Missouri, since the Delaware company was not in existence at the time the notes were issued. There is no evidence in the record concerning whether the Missouri corporation was, in fact, viable in September 1999. The January 1998 letter to Cheverie asking for confirmation of the promissory notes was sent more than a year before the challenged letter and one cannot tell whether it was sent by the Missouri or Delaware company, since their names are the same. For the same reason, the fact that the September 1999 letter was on "Harvest Board" stationery proves nothing at this stage since, again, both companies had the same name.

Perhaps more importantly, a fair reading of the letter is that the defendants were questioning Callahan's right to recover under the notes for a myriad of reasons, but were not precluding further discussion of the issues. The defendants' skepticism was well founded. Whether through inadvertence or otherwise Callahan never obtained title to at least two of the promissory notes she is seeking to enforce. The defendants cannot be faulted for raising legitimate defenses to the plaintiff's claims.

Finally, even the most liberal reading of the complaint and facts presented by the plaintiff in support of her motion for summary judgment fails to support the plaintiff's claims. As to the fraud count (Count III), the defendants' motion to dismiss under Fed.R.Civ.P. 9(b) should be allowed except to the extent that the fraud claim relates to the September 1999 letter. There are no details whatsoever provided about any other fraudulent statements or communications. *See* Compl. at ¶¶ 40–45.

Fed.R.Civ.P. 9(b) provides: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, general claims of wrongdoing are insufficient.

■ With respect to the fraud claim relating to the September 1999 letter, there is no evidence in the record whatsoever that Callahan in any way relied on the alleged misrepresentations as to the maker of the note. In fact, all the evidence is to the contrary. Callahan claims that the misrepresentation was apparently false as evidenced by the stationery used, so she must have known of the fraud immediately. Nevertheless, she continued to pursue collection of the promissory notes. Absent reliance on the alleged misrepresentation, the fraud claim cannot stand. *See Murphy,* 460 F.2d at 664–65 (where clear that plaintiff was not deceived, jurisdiction cannot be based on claim of fraud); *Mass. Sch. of Law,* 142 F.3d at 41 (absent reliance, claim of negligent misrepresentation must be dismissed),

■ Similarly, the complaint fails to state a claim under Mass. Gen. Laws ch. 93A. A breach of contract without more, does not violate chapter 93A. *See Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 100–01, 390 N.E.2d 243, 251 (1979); *Pepsi–Cola Metro. Bottling Co. v. Checkers, Inc.,* 754 F.2d 10, 18 (1st Cir.1985). Moreover, a mere non-payment of debt does not normally constitute a chapter 93A violation. *See Quaker State Oil Refining Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1513–14 (1st Cir.1989) (affirming district court's decision which granted summary judgment sua sponte because refusal to pay invoice and debt on promissory notes without more was not sufficient to constitute a 93A violation). "Where there is a good faith

claims precludes summary judgment on that issue.

dispute over whether payment is actually owed, and that dispute is clearly articulated, it also appears that there is not Chapter 93A liability." *Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 56 (1st Cir. 1998).

 Admittedly, an intentional breach of contract intended to secure benefits for the breaching party can constitute a 93A violation. *See Anthony's Pier Four, Inc. v. HBC Assoc.,* 411 Mass. 451, 474, 583 N.E.2d 806, 821 (1991) ("conduct that is in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for ch. 93A purposes") (citation omitted). However, this breach of contract must also have an "extortionate quality that gives it the rancid flavor of unfairness." *Atkinson v. Rosenthal,* 33 Mass.App.Ct. 219, 226, 598 N.E.2d 666, 670 (1992); *Pepsi Cola Metro. Bottling,* 754 F.2d at 17–19 (Chapter 93A violation found where payment withheld as a wedge to enhance bargaining power); *Arthur D. Little, Inc.,* 147 F.3d at 55–56 (court found 93A liability where defendants "wrongful purpose was to extract a favorable settlement from [plaintiff] for less than the amount defendant knew it owned by repeatedly promising to pay, not doing so, stringing out the process, and forcing [plaintiff] to sue"); *Community Builders, Inc. v. Indian Motocycle Assoc., Inc.,* 44 Mass.App.Ct. 537, 559, 692 N.E.2d 964, 978–79 (1998) (where defendant engaged in willful effort to impair plaintiff's right to be paid under contract and when defendant could have made necessary payments but through foot-dragging to put pressure on plaintiff to compromise its claims, court found that defendant's conduct amounted

to more than mere nonpayment of debt). No such factors can be found here.

The 93A claim must fail for the additional reason that the plaintiff has failed to claim an injury apart from that caused by the alleged breach of contract and has failed to demonstrate a "loss of money or property" as required by chapter 93A. *See* Mass. Gen. Laws. ch. 93A, § 11. *See also Lyle,* 132 F.3d at 114–15 (loss of money must stem from deceptive act). Plaintiff does not allege any damage separate and apart from the breach of contract claim. Callahan's attempt to convert her breach of contract claim to a 93A action should fail. *See Mass. Sch. of Law,* 142 F.3d at 41–43 (letter transmitting alleged misinformation does not rise to level of 93A claim); *Lyle,* 132 F.3d at 114–15 (backdated termination letter does not state a claim under ch. 93A, at most a breach of contract claim asserted).[13]

Finally, plaintiff has alleged that the defendants were negligent in failing to pay the amounts due under the notes. She has not, however, asserted any duty owed to her or Cheverie. Absent such a duty, a negligence claim will not lie. *See In re Fordham,* 130 B.R. 632, 647 (Bankr. D.Mass.1991) (no duty of care in lender-borrower relationship). Again, this claim is, in reality, a breach of contract claim.

For all these reasons, the defendants' motions to dismiss for lack of personal jurisdiction should be ALLOWED.

### C. *Plaintiff's Cross–Motion for Summary Judgment*

Plaintiff has filed a cross-motion for summary judgment seeking the entry of judgment in her favor on all counts of the

---

**13.** Since the plaintiff has not pleaded sufficient facts to state a claim under Mass. Gen. Laws ch. 93A, there is no need to reach the question whether the alleged unfair and deceptive act or practice "occurred primarily and substantially within the Commonwealth" as required by ch. 93A § 11.

complaint. (Docket # 14). The defendants, who oppose the motion, have not yet filed any answers to the complaint since their motions to dismiss are still pending. If, as this court recommends, the motions to dismiss for lack of personal jurisdiction are allowed, there is no need for this court to address the motion for summary judgment. *See United States v. Swiss Am. Bank Ltd.,* 191 F.3d 30, 46 (1st Cir.1999). If, however, that motion is addressed, this court recommends that the motion for summary judgment be denied as there are material facts in dispute.[14]

There are material issues in dispute regarding plaintiff's right to enforce the promissory notes. For example, plaintiff herself has admitted that she never levied upon two of the notes she is seeking to enforce. (Notice Re: New Execution and Re: Cheverie's Ties to Mass (Docket # 42) ¶ 2 and Ex. 5). Moreover, the defendants have raised facts which, if true, may preclude any finding of liability under the notes, including that the notes may have been rescinded. (*See* Second Hulsoff Aff.). Similarly, the timing of plaintiff's default judgment claim against Cheverie (after his death), with the plaintiff contending in this court that Cheverie was a Massachusetts resident while claiming in the state court that he was a Florida resident, may warrant further exploration. Furthermore, since plaintiff claims title to the notes through judicial process, it is unclear at this stage of the proceedings whether she

would be a holder in due course as a matter of law. *See* Mass. Gen. Laws ch. 106, § 3–302(c) ("Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process . . .").

The entire complaint is premised on and dependent upon Harvest Board's liability under the notes. Therefore, the existence of disputed facts on this point compels the conclusion that the cross-motion for summary judgment be denied.[15] Moreover, as detailed above, the plaintiff has failed to state a claim under ch. 93A, has failed to establish the existence of a duty to support her negligence claim, and has not proffered evidence of reliance to support her fraud claim. For these reasons as well, the cross-motion for summary judgment should be denied.

### CONCLUSION

For all the reasons stated herein, I recommend that the defendants' motions to dismiss for lack of personal jurisdiction be ALLOWED.[16]

February 16, 2001.

---

14. Since material facts are so clearly in dispute, there is no need to address defendants' claims that the motion should be denied because plaintiff failed to comply with the pleading requirements of Local Rule 56.1, or defendants' request for additional discovery under Fed.R.Civ.P. 56(f). This court does, however, acknowledge the merits of the defendants' position.

15. Due to these disputed facts, this court has denied plaintiff's "Motion to Deem Facts Established et al" (Docket # 44) by which plain-

tiff is seeking to have this court rule that her ownership of the notes has been established. In the same motion, the plaintiff is seeking to have this court enter an order warning the defendants that they will be sanctioned if they fail to prove any claim and any and all defenses they have raised. Such a warning is not warranted and will not be issued.

16. The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachu-

setts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4–5 (1st Cir.1998).