## NASH FINCH CO.

v.

**J. Scott PRESTON, individually; and the law firm of Rice, Preston, Brown.**

No. 4–94–CV–678.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 17, 1994.

Steven William Meyer, Robert J. McGillivray, Oppenheimer Wolff & Donnelly, Minneapolis, MN, for plaintiff.

Lewis A. Remele, Jr., Bassford Lockhart Truesdell & Briggs, Minneapolis, MN, for defendants.

## ORDER

ROSENBAUM, District Judge.

The plaintiff, Nash Finch Company ("Nash Finch"), filed this action on August 4, 1994, asserting claims of professional malpractice, negligence, and misrepresentation against an attorney and his law firm. The defendants, J. Scott Preston ("Preston") and Rice, Preston, Brown (the "law firm"), move to dismiss for lack of personal jurisdiction, or alternatively, for an order transferring venue to the United States District Court, Eastern District of Kentucky, pursuant to 28 U.S.C. § 1404(a). The Court heard oral argument on October 19, 1994. The defendants' motion to dismiss is granted.

### I. *Background*

Nash Finch is a Delaware corporation with its principal place of business in Minnesota. It is in the grocery distribution business. In the fall of 1992, Nash Finch loaned $5,100,000 (the "loan") to Paintsville Foods, Inc., and certain of its subsidiaries ("Paintsville"), all of which were based in Kentucky. Paintsville was claimed to be owned by Henry Lyon ("Lyon"). Nash Finch and Paintsville executed at least ten documents, including a Security Agreement, in connection with the loan. The Security Agreement, by its terms, pledged all equipment, machinery, inventory, and receivables located at nine of Lyon's grocery stores as collateral for the loan. Nash Finch was represented by its own counsel in this transaction.

Defendant Preston, an attorney licensed to practice law only in the state of Kentucky, represented Lyon and his companies in their dealings with Nash Finch. Preston is a partner of the four-lawyer firm of Rice, Preston, Brown. He and the firm reside in Kentucky. Neither Preston nor any other lawyer from the law firm has ever been licensed to practice in Minnesota. The law firm has never advertised for clients, or had an office, telephone, or bank account in Minnesota.

Prior to the closure of the loan, Preston and counsel for Nash Finch exchanged correspondence and engaged in telephone conversations. Among the letters exchanged was an October 29, 1992, "opinion letter" to Nash Finch, over Preston's signature, in which Preston represented that he had reviewed the loan documents.

Paintsville ultimately defaulted on the loan. When Paintsville filed for bankruptcy, on August 30, 1993, it owed approximately $4,829,093 to Nash Finch. Nash Finch attempted to enforce its security interest, only to find that Paintsville did not own two of the nine grocery stores it pledged as collateral. The two stores were instead owned by Mineral Labs, Inc., a company owned by Lyon's brother, Paul, who was also one of Preston's clients.

Nash Finch claims that Preston's October 29, 1992, opinion letter constituted professional malpractice, negligence, and an actionable misrepresentation on Preston's and the law firm's part. The plaintiff asserts that this Court has personal jurisdiction, pursuant to 28 U.S.C. § 1332.

### II. *Personal Jurisdiction*

A federal court in a diversity action may assume jurisdiction over non-resident defendants to the extent permitted by the long-arm statute of the forum state and the due process clause of the Fourteenth Amend-

ment. *Morris v. Barkbuster, Inc.,* 923 F.2d 1277 (8th Cir.1991). The Minnesota Supreme Court has interpreted the reach of Minnesota's long-arm statute to be coextensive with that permitted by due process. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir.1983).

▪ Due process is satisfied where nonresident defendants have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Sybaritic, Inc. v. Interport Int'l, Inc.,* 957 F.2d 522, 524 (8th Cir.1992). These minimum contacts exist when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (*citing Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). "Purposeful availment" is defined as deliberately engaging in significant activities within a state or creating "continuing obligations" between a litigant and residents of the forum. *Burger King* at 475–76.

▪ The Court, in determining the sufficiency of defendants' contacts, must evaluate the following factors:

1) the nature and quality of contacts with the forum state;

2) the quantity of such contacts;

3) the relation of the cause of action to the contacts;

4) the interest of the forum state in providing a forum for its residents; and

5) the convenience of the parties.

*Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965). Of these factors, the first three are the most important. *Land–O–Nod,* 708 F.2d at 1340. Upon consideration of the *Aftanase* factors, the Court finds that defendants' contacts with Minnesota were so minimal that assertion of personal jurisdiction over the defendants is inconsistent with due process.

It is uncontroverted that Preston's only contacts with Minnesota were in connection with his representation of Paintsville in the Nash Finch loan. The contacts were made exclusively by phone or mail. Neither Preston nor his partners ever solicited clients, practiced law, or met with Nash Finch or its representatives in Minnesota. Such limited contacts by a non-resident attorney, even when the client was a Minnesota resident, led Judge MacLaughlin to find there was no Minnesota jurisdiction in *St. Paul Fire & Marine Ins. Co. v. Servidone Constr. Corp.,* 778 F.Supp. 1496 (D.Minn.1991).

Nash Finch proffers cases which hold that correspondence or phone calls containing misrepresentations or other tortious matter directed to the forum state can be sufficient to confer personal jurisdiction. This is true; but, in none of these cases is the defendant an out-of-state attorney. The distinction has been recognized by the Eighth Circuit in *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987). In *Austad,* the non-resident attorney had more contacts with the proposed forum than are found here. The contacts were performed on behalf of its own client. The client then became the plaintiff and sued Pennie & Edwards, its former counsel. Yet the Eighth Circuit held that the forum state lacked personal jurisdiction over the defendant because the law firm had not availed itself of the benefits and protections of the forum state's law such that the exercise of jurisdiction comported with due process. *Id.* at 226.

The Ninth Circuit has made the distinction even more clearly. In *Sher v. Johnson,* 911 F.2d 1357, 1363 (9th Cir.1990), the court stated that out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where a law firm was solicited in its home state and takes no affirmative action to promote business within the forum state. The court found that to be subject to personal jurisdiction, an out-of-state lawyer must do more than merely communicate with persons in the forum state at the client's behest.

A rule limiting jurisdiction in this way is reasonable. A contrary rule would mean that anytime a lawyer sent a letter beyond

his or her own state's borders, that lawyer would be subject to the jurisdiction of the state of the addressee. Such a rule would make interstate law practice all but impossible. A law firm could well be susceptible to the jurisdiction of every state in the union. Such a possibility is absurd.

With all of these thoughts in mind, the Court considers the defendants' contacts with Minnesota in light of the *Aftanase* test. The Court finds that the first factor, the nature and quality of the contacts with the forum state, favors the defendants. Preston's contacts with Nash Finch were essentially responsive in nature. Nash Finch did not compensate Preston for his services. Neither Preston nor any member of his law firm entered Minnesota. In this Court's view, Preston did not purposefully avail himself of the benefits and protections of Minnesota law.

The second *Aftanase* factor, the quantity of the defendants' contacts with the forum state, marginally favors the defendants. It appears that Preston and Nash Finch's counsel engaged in approximately a dozen telephone calls and exchanged thirteen letters. Twenty-five contacts with a forum state could be sufficient to establish personal jurisdiction, but the Court has established that the nature and quality of these contacts weigh against the plaintiff's jurisdictional claim.

The third factor, the relation of the cause of action to the contacts, favors the plaintiff. The October 29, 1992, opinion letter Preston mailed to Minnesota contains the representations which are claimed to be tortious.

The less important fourth and fifth factors, the interest of the forum state in providing a forum for its residents and the convenience of the parties, favor the defendants. Minnesota certainly has an interest in providing a forum for its citizens, be they corporate or individual. But Preston and the law firm have no connection to Minnesota. The plaintiff, on the other hand, regularly transacts business in Kentucky. Most of the witnesses are in Kentucky. Kentucky professional malpractice law will apply to the merits of the case. These factors weigh against Minnesota jurisdiction.

The Court finds that Nash Finch has failed to make a prima facie showing in favor of the exercise of jurisdiction. Accordingly, based on the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

Defendants' motion to dismiss for lack of personal jurisdiction is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.