DANIEL J. FERN & others[1] *vs.* MEL M. IMMERGUT[2] & others.[3]

No. 98-P-2338.

Barnstable. June 6, 2000. - August 15, 2002.

Present: JACOBS, BECK, & DUFFLY, JJ.

*Jurisdiction,* Personal, Long-arm statute. *Due Process of Law,* Jurisdiction over nonresident.

Discussion of the prima facie showing that a plaintiff must make when facing a challenge to an assertion of in personam jurisdiction. [579-581]

Personal jurisdiction over the defendant in a civil action was lacking under G. L. c. 223A, § 3(*a*), pursuant to which jurisdiction may be exercised over a person as to a cause of action in law or equity arising from the person's transacting any business in the Commonwealth, where the plaintiff made no showing of a sufficient nexus between the defendant's contacts with Massachusetts, which consisted of the defendant's preparation of a draft of an opinion letter that was to be executed by one of the plaintiff's partners and brief contacts with that partner, and the plaintiff's claim that the defendant, a New York law firm, negligently represented its client, a Finnish corporation with a New York office. [581-583] BECK, J., dissenting.

The contacts of the defendant, a New York law firm, with Massachusetts were insufficiently related to the cause of action to confer personal jurisdiction in a civil action brought in Massachusetts, where the defendant's sending of a draft opinion letter and forms to Massachusetts could not conceivably have caused the alleged negligent legal representation consisting of the defendant's failure to discover that the opinion letter purportedly issued by the plaintiff, a Massachusetts law firm, was false. [583-585] BECK, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on January 31, 1997.

The case was heard by *Richard F. Connon,* J., on a motion to dismiss, and entry of separate judgment was ordered by *Gerald F. O'Neill, Jr.,* J.

[1]Richard C. Anderson, Robert J. Donahue, and Charles M. Sabatt.

[2]As representative of the partnership doing business as Milbank, Tweed, Hadley & McCloy.

[3]Connie A. Rodriguez, Warren T. Buhle, John A. Aufiero, and Robert F. Welch.

*Erik Lund* for the plaintiffs.

*Kathleen E. Cross (Daniel J. Lyne* with her) for the defendants.

DUFFLY, J. The remaining partners of a five-member Massachusetts law firm, Fern, Anderson, Donahue, Jones & Sabatt, P.A. (Fern), seek indemnification or contribution from a New York law firm, Milbank, Tweed, Hadley & McCloy (Milbank). Fern had previously settled a claim against it made by Milbank's New York client, Kansallis Finance, Ltd. (Kansallis), a Finnish corporation with a New York office. In the complaint before us, Fern alleges that Milbank was negligent in its representation of Kansallis. Fern appeals from the dismissal of this complaint for lack of jurisdiction. We conclude that the jurisdictional facts of this case do not warrant the extension of personal jurisdiction over Milbank.

The prior litigation against Fern, that did not involve any of the defendants in the instant action, provides context but no relevant detail. We briefly set forth, in the margin, facts related to that action.[4] After settling that lawsuit, Fern filed the instant action alleging that Milbank had been engaged by Kansallis to represent its interest in connection with a loan transaction that required, among other things, an opinion letter. According to the complaint, "In that connection, Milbank sought personal guarantees from Jones [a Massachusetts resident]; had numer-

---

[4] One of Fern's partners was Stephen C. Jones. Jones masterminded a scheme that involved giving false assurances to Milbank's client, Kansallis, in connection with a loan. The transaction involved Armory Hotel Associates (Armory), a Maine partnership engaged in the development of a hotel property in Maine, and Iyanough Management Co., a Massachusetts based joint venture partner of Armory. Iyanough secured a loan from Kansallis that was structured as a sale-leaseback of hotel equipment in which Kansallis was to have a first security interest. Jones caused an opinion letter to be issued to Kansallis on Fern's letterhead that provided assurances that Kansallis had a duly perfected first priority interest in the collateral. The assurances were false. Jones was convicted and incarcerated and, following the determination in *Kansallis Fin. Ltd.* v. *Fern*, 421 Mass. 659, 675-676 (1996), that Fern's innocent and uninvolved partners could nevertheless be held vicariously liable for Jones's acts, Fern settled with Kansallis, paying $1.1 million in settlement of all of Kansallis's claims.

Apart from determining Fern's responsibility for issuing an opinion letter, see *ibid.*, Massachusetts has little interest in determining the culpability of a New York law firm vis à vis its New York client.

ous contacts with Jones in the form of telephone calls and correspondence to and from Massachusetts . . . and sent a draft of the opinion letter to Jones in Massachusetts."[5] Fern's claim appears to be premised on the theory that Milbank should have been on notice of irregularities in the loan transaction when it received the opinion letter issued on Fern's letterhead, because the name of the person signing the letter was not on the letterhead as a member of the firm. Thus alerted to this (and other implied irregularities), Milbank was negligent in its representation of Kansallis for failing to make further inquiries that, presumably, would have uncovered the scheme in time to prevent the losses suffered by Kansallis.

Fern asserts that the long-arm statute, G. L. c. 223A, § 3(a), confers personal jurisdiction over Milbank in connection with this claim. We conclude that application of the jurisdictional facts to both the "arising from" requirements of § 3(a) and the constitutionally based principle of "relatedness" do not support personal jurisdiction.[6]

*Prima facie showing.* When, as here, the assertion of in personam jurisdiction has been challenged under Mass.R.Civ.P. 12(b)(2), 365 Mass. 754 (1974), a plaintiff must make a prima facie showing of evidence that, if credited, would be sufficient to support findings of all facts essential to personal jurisdiction. "[T]he plaintiffs bear the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 3 (1979) (*Good Hope Indus.*). See also *Stanton* v. *AM Gen. Corp.*, 50 Mass. App. Ct. 116, 117 (2000). "In resolving the issue [of whether the plaintiff has established its burden], we accept as true only the uncontroverted facts as they appear in the materials which were before the Superior Court judge." *Heins* v. *Wil-*

---

[5]The complaint is not verified and none of the allegations are contained in affidavits or other materials that aver personal knowledge of facts supporting the allegations. To the extent that allegations in the complaint relate to the claim of negligence, we take these allegations to be true for the purposes of this opinion, solely in order to assess whether the negligence claims arose out of Milbank's contacts with Massachusetts.

[6]We therefore do not think it necessary to address whether the particular documents that were, in this case, sent into Massachusetts constitute "transacting business" under G. L. c. 223A, § 3(a).

*helm Loh Wetzlar Optical Mach. GmbH & Co. KG*, 26 Mass. App. Ct. 14, 16 (1988).[7]

Based on these considerations, the jurisdictional facts on which we will permit Fern to rely in support of its opposition to Milbank's motion to dismiss consist of Milbank's having made a few brief telephone calls to Jones in Massachusetts and sending Jones three letters containing drafts of an opinion letter and two forms to be executed by others.[8] "[T]he question to be

---

[7] The question has not been settled as to the level of proof required to meet this burden where parties differ as to jurisdictional facts, or the extent to which the motion judge may resort to differential fact finding in these circumstances. Compare *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650, 653-655 (1998) (reliance on allegations in unverified complaint does not meet plaintiff's burden), and *Nichols Assocs., Inc.* v. *Starr*, 4 Mass. App. Ct. 91, 93-94 (1976) (drawing unwarranted inferences from record misplaces the burden of proof), with *Kleinerman* v. *Morse*, 26 Mass. App. Ct. 819, 821 n.4 (1989) ("determination of jurisdiction — or the lack of it — may rest on the facts alleged in the complaint") and *Boit* v. *Gar-Tec. Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) ("some courts — but a minority — appear to hold that allegations in a complaint, unsupported by any evidence in the record before the court, are sufficient to make a prima facie showing of personal jurisdiction so long as the defendant does not present evidence to contradict the allegations").

We agree that acceptance of a plaintiff's properly documented evidentiary proffers as true "is a useful means of screening out cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus." *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). Indeed, the specific, non-conclusory facts alleged in a complaint may so clearly manifest a lack of jurisdiction that dismissal on the basis of the complaint alone would be warranted. On this record, there is no dispute regarding the relevant jurisdictional facts.

[8] The affidavit submitted by Fern to support its prima facie showing of personal jurisdiction, signed by Fern's counsel, makes no averments of jurisdictional fact, referring instead to documents attached to the affidavit but offering no explanation as to the meaning to be given to any of the documents beyond the statement that the documents (produced by Connie A. Rodriguez, an associate attorney employed by Milbank), were part of the August 10, 1987, closing binder. These included an "Acknowledgment," "Partnership Authorization of Iyanough Management," and "the August 10, 1987, Opinion Letter." Three letters from Rodriguez to Jones were also attached to the affidavit.

Because we have Rodriguez's affidavit, it appears to be uncontested that Rodriguez sent to Jones in Massachusetts three cover letters containing documents: her July 10, 1987, letter referenced an enclosed "draft of the Acknowledgment and opinion of counsel," and "a form of partnership authorization which I would appreciate receiving from Armory"; the July 14, 1987, letter refers to "execution copies" of the Acknowledgment included

decided is whether [Fern] has presented uncontroverted jurisdictional facts sufficient 'to survive due process scrutiny' and 'to satisfy at least one of the statutory prerequisites.' " *C.H. Babb Co.* v. *A.M. Mfg. Co.*, 14 Mass. App. Ct. 291, 293 (1982), quoting from *Good Hope Indus., supra* at 6.

*Arising from.* Fern claims that personal jurisdiction over Milbank is proper under G. L. c. 223A, § 3(*a*), pursuant to which jurisdiction is exercised over a person "as to a cause of action in law or equity arising from the person's transacting any business in the Commonwealth."[9] To qualify as jurisdiction-inducing activity, Milbank's forum contacts must have given

with the correspondence; and the August 5, 1987, letter enclosed a "revised draft of the opinion." It is not alleged, nor does the record reflect, that executed copies of the draft acknowledgment and partnership authorization (which might have revealed that Jones was wearing too many hats) were received by Milbank prior to the closing.

[9]Fern makes no claim of jurisdiction under G. L. c. 223A, § 3(*c*), providing for personal jurisdiction arising from Milbank's "causing tortious injury by an act or omission in this commonwealth," no doubt because it cannot be claimed on these facts that Milbank's alleged malpractice occurred in this Commonwealth. See, e.g., *Kowalski* v. *Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 9-11 (1st Cir. 1986); *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995).

Neither was a claim of general jurisdiction asserted under § 3(*d*), see *Connecticut Natl. Bank* v. *Hoover Treated Wood Prods., Inc.*, 37 Mass. App. Ct. 231, 233-234 n.6 ("c. 223A, § 3(*d*), is predicated on general jurisdiction"), where jurisdiction is based on the person's "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered[] in this commonwealth." See G. L. c. 223A, § 3(*d*). Even if it could be claimed on these facts that there was a tortious injury within the Commonwealth as a consequence of Milbank's negligence in New York — a doubtful proposition, see, e.g., *Cunningham* v. *Ardrox, Inc.*, 40 Mass. App. Ct. 279, 282 (1996); *Crocker* v. *Hilton Intl. Barb., Ltd.*, 976 F.2d 797, 800 (1st Cir. 1992) — there was no claim, much less a showing, that Milbank regularly engaged in or solicited business in Massachusetts or derived substantial revenues from services performed in Massachusetts.

Fern's request for jurisdictional discovery, made in a footnote to its memorandum submitted to the trial judge, was not acted on. Fern, arguing that this constitutes a denial of its request, seeks discovery to establish whether facts exist that support general jurisdiction and challenges the "denial." We decline to address the issue, raised for the first time on appeal. See *First Fed. Sav. & Loan Assn.* v. *Merrimack Valley Natl. Bank*, 5 Mass. App. Ct. 320, 323-324 (1977).

rise to Milbank's alleged malpractice. See *Good Hope Indus.*, 378 Mass. at 6.

The analysis requires that the relationship of the jurisdictional facts present in this case be considered in light of the claim that Milbank was negligent in its representation of its New York client by failing to be alert to irregularities that presented themselves when Milbank received an opinion letter on Fern's letterhead that was not signed by a person listed thereon as a partner. It is not alleged that language proposed by Milbank to be included in Fern's opinion was deficient and thereby contributed to Kansallis's losses, nor that Milbank issued a directive to Fern to execute the opinion letter regardless of the truth or falsity of the proposed language. And, although the complaint refers to "irregularities" in the loan transaction, there is no claim in the complaint, the plaintiff's brief, or in any affidavit or other document in the record, that Milbank was aware of irregularities, or had information prior to the closing of the transaction that should have alerted it to irregularities, other than those that might be gleaned from Fern's executed opinion letter.[10]

We conclude that Milbank's preparation of a draft of an opinion that was to be executed by Fern, and brief contacts with Fern's partner in Massachusetts for the purpose of securing Fern's opinion, do not give rise to personal jurisdiction over Milbank in Massachusetts. A claim of negligent representation that turns on what Milbank should have known when it received Fern's opinion (or other documents) at its offices in New York has only a peripheral relationship to the isolated jurisdictional contacts present in this case. The fact that Milbank prepared (as it was undoubtedly appropriate to do) a draft suggesting the language that would give appropriate assurances to its client adds no heft to the contacts. That the assurances turned out to

---

[10]Our analysis would be the same even if we were to assume that Milbank was on inquiry notice prior to the closing that Jones was a partner of Iyanough. We therefore do not reach the issue whether it could reasonably be inferred from documents in the loan closing binder (including copies of an executed guarantee and Iyanough partnership authorization which reflect the information that Jones was a partner of Iyanough) that Milbank had this information prior to the August 10, 1987, closing date. See note 8, *supra.*

be empty was not the result of Milbank's action in sending the draft.

The present case is similar in its jurisdictional facts to those of *Telco Communications, Inc.* v. *New Jersey St. Fireman's Mut. Benevolent Assn.*, 41 Mass. App. Ct. 225, 231 (1996), where Justice Kaplan stated, in connection with a breach of contract claim, that telephone and other communications and the faxing of drafts of the contract to Massachusetts did not confer jurisdiction under § 3(a). See also *Stanton* v. *AM Gen. Corp.*, 50 Mass. App. Ct. at 118-119 (plaintiff Massachusetts trucker employed by separate transport company, was injured on Indiana company's site when he delivered parts; that Indiana company purchased parts from Massachusetts business failed to establish that it was "doing business in Massachusetts and that [plaintiff's] injury grew out of that business."); *LTX Corp.* v. *Daewoo Corp.*, 979 F. Supp. 51, 55 (D.Mass. 1997) (interpreting § 3(*a*), no jurisdiction over Korean companies in action for breach of contract by Massachusetts corporation where contract was not signed in Massachusetts and in-State activity did not give rise to breach of contract action).[11] Because there is no showing of a sufficient nexus between Milbank's contacts with Massachusetts and the claim that it negligently represented Kansallis, we conclude that jurisdiction is lacking under § 3(*a*). Because we disagree with the dissent as to this issue, we proceed to discuss a further basis to decline jurisdiction.

*Relatedness.* Because the Massachusetts long-arm statute has been construed to "function[] as an assertion of jurisdiction over the person to the limits allowed by the [Federal] Constitution," (citation omitted), *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 771 (1994), in the final analysis, the question is whether subjecting Milbank to jurisdiction is permissible under the relatedness factor of the due process analysis described in *Saw-*

---

[11]Comparison of the facts of this case to those in *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1 (1979), will illustrate circumstances when "the cause of action alleged obviously has arisen, at least in part, by virtue of that transaction of business in Massachusetts." *Id.* at 6-7 (Texas corporation provided geological services worldwide and had numerous contacts with plaintiff in Massachusetts related to appraisal of plaintiff's gas interests, including sending nine appraisal reports; plaintiff alleged it was damaged by defendant's negligent appraisal misrepresenting value of its interests).

*tell* v. *Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995). "The related-
ness requirement is not met merely because a plaintiff's cause
of action arose out of the general relationship between the par-
ties; rather, the action must *directly arise* out of the *specific
contacts* between the defendant and the forum state." *Id.* at
1389 (emphasis supplied). The court in *Sawtell* concluded that
jurisdiction was lacking over a Virginia law firm in a malpractice
suit against it brought in New Hampshire. See *id.* at 1384-1390.
Although the law firm sent fifteen letters and made numerous
telephone calls to the plaintiffs in the forum, only one letter
(recommending settlement) related to the claim. See *id.* at 1386,
1389. In *Philips Exeter Academy* v. *Howard Phillips Fund, Inc.*,
196 F.3d 284, 291 (1st Cir. 1999), a Florida fiduciary sent let-
ters and annual checks, and paid one visit, to a New Hampshire
private school. The school claimed it had been short-changed
and argued that jurisdiction over the fiduciary was appropriate
on the strength of the foregoing contacts and because "the
*consequences* of the relationship involved contacts with New
Hampshire" (emphasis in original). *Ibid.* Rejecting this argu-
ment, and noting that the foreseeability of causing injury in
another State is not alone sufficient to confer jurisdiction, the
court said: "the receipt of payment in New Hampshire could
not conceivably have *caused* the breach of the duty of loyalty
of which Exeter complains" (emphasis in original). *Ibid.*

The foregoing observation applies with equal force to the
facts of this case: the sending of a draft letter and forms to
Massachusetts could not conceivably have caused the alleged
negligent representation consisting of Milbank's failure to
discover that the opinion letter issued by Fern was false. See
*Massachusetts Sch. of Law at Andover, Inc.* v. *American Bar
Assn.*, 142 F.3d 26 (1st Cir. 1998).[12] See also *Austad Co.* v. *Pen-*

---

[12]*Massachusetts Sch. of Law of Andover, Inc.* v. *American Bar Assn.*, 142
F.3d 26 (1st Cir. 1998), involved a suit over a school's accreditation. The
defendants' forum related contacts consisted of attending a meeting where ac-
creditation was discussed peripherally and participation in a retreat where it
was not discussed at all. See *id.* at 35. Declining to extend jurisdiction, the
court concluded that relatedness analysis focuses on causation; a plaintiff must
establish cause in fact and legal cause. See *ibid.*

*nie & Edmonds*, 823 F.2d 223 (8th Cir. 1987)[13]; *Nash Finch Co. v. Preston*, 867 F. Supp. 866 (D.Minn. 1994).[14]

We therefore conclude that Milbank's forum contacts were insufficiently related to the cause of action to confer personal jurisdiction, and affirm the order of dismissal.[15]

*Judgment affirmed.*

BECK, J. (dissenting). The majority describes the claim of the remaining partners of the law firm of Fern, Anderson, Donahue, Jones & Sabatt, P.A. (Fern), against Milbank, Tweed, Hadley & McCloy (Milbank) as based on Milbanks's failure "to be alert to irregularities that presented themselves when Milbank received an opinion letter on Fern's letterhead that was not signed by a person listed thereon as a partner." Ante at 582.

---

[13]There was no South Dakota jurisdiction conferred in *Austad Co.* v. *Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987), where an action against a New York law firm by a South Dakota client alleged professional negligence in connection with patent litigation in Maryland. See *id.* at 224. The action was filed on behalf of the law firm's New York client and others including plaintiff. See *ibid.* The law firm's only forum-related contacts consisted of a three-day visit to inspect documents, numerous telephone calls and monthly billings to the plaintiff. See *id.* at 226-227.

[14]In *Nash Finch Co.* v. *Preston*, 867 F. Supp. 866 (D.Minn. 1994), a Minnesota plaintiff sued a Kentucky law firm in Minnesota alleging that, in connection with the plaintiff's loan to the law firm's Kentucky client, the law firm had made tortious misrepresentations in its opinion letter. See *id.* at 867. The law firm had a dozen telephone conversations and exchanged thirteen letters with the plaintiff that included the law firm's opinion letter stating it had reviewed the loan documents. See *id.* at 868-869. Suit was filed when the business defaulted and it was learned that the collateral securing the loan was not owned by the business. See *id.* at 867. Because the claims were based on the defendant's misrepresentations, the cause of action was related to the contacts. See *id.* at 869 (no jurisdiction, however, in part because contacts did not evince purposeful availment).

[15]Having reached this conclusion, we need not decide whether the claim of jurisdiction also fails under the "purposeful availment" component of due process analysis, which asks "whether [Milbank] has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.' " *Sawtell* v. *Farrell*, 70 F.3d at 1391, quoting from *Rush* v. *Savchuk*, 444 U.S. 320, 329 (1980). See, e.g., *Nash Finch Co.* v. *Preston, supra* at 868 (to establish purposeful availment "out-of-state lawyer must do more than merely communicate with persons in the forum state at the client's behest").

There was more to it than that. Fern contends that Milbank "committed negligence not merely by inadequately inspecting the final version of the opinion letter [in New York], but by deliberately seeking the opinion letter from, and requesting execution of the letter by, a Massachusetts principal [Fern's partner, Stephen C. Jones] in the loan transaction" involving a Massachusetts partnership. Because I believe that Fern's claim involves sufficient Massachusetts contacts to warrant personal jurisdiction over Milbank, I respectfully dissent.

Although there were at least three documents that Milbank sent to Jones in Massachusetts for execution, it is the opinion of counsel letter that is key. The Milbank associate assigned to the Kansallis Finance, Ltd. (Kansallis), matter acknowledged that after sending Jones a draft of the proposed opinion letter her client required, she sent Jones "a revised draft of the opinion letter . . . [for him] to render." Jones then sent the opinion letter back to Milbank on Fern letterhead. (The unverified complaint states that Jones had the text of the revised letter Milbank sent to him "re-typed verbatim" on the Fern letterhead. Milbank does not dispute this assertion.) Milbank also sent Jones for execution a partnership acknowledgment of the Maine and Massachusetts partnerships, and a form of partnership authorization.

Although not a contract, see *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 105 (1980) (physically signing a contract in Massachusetts is transacting business here), the execution of the opinion letter was "an essential and critical stage," *ibid.*, in a significant loan transaction with other Massachusetts connections. Cf. *Johnson* v. *Witlowski*, 30 Mass. App. Ct. 697, 713 (1991) (signing document in Massachusetts amending trust by appointing signor as trustee "purposeful and meaningful business transaction"); *Haddad* v. *Taylor*, 32 Mass. App. Ct. 332, 333-335 (1992) (telephone negotiations concerning sale of real property in Massachusetts and sending of draft purchase and sale agreement into Commonwealth constituted transacting business).

In my view, Fern's cause of action arose to a substantial extent from Milbank's contacts with Massachusetts. Milbank not only drafted and sent into Massachusetts documents critical

to the purported loan transaction, it continued to deal with Jones in Massachusetts without further inquiry, despite information in documents mentioned in the opinion letter it drafted that Jones was wearing too many hats, including his role as counsel to at least one of the partnerships, as well as his role as a guarantor. This conduct contributed to Kansallis's losses for which Fern seeks to recover here, and satisfies the "arising from" requirement under our long-arm statute. See *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 771 (1994).

The "arising from" requirement in our long-arm statute "corresponds" to the relatedness requirement under the due process clause. See *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 46 F.3d 138, 144-145 & n.3 (1st Cir. 1995) (evaluating relatedness requirement reduces to whether the plaintiff's claim arises from the defendant's minimum contacts). Although the United States Court of Appeals for the First Circuit has taken "the restrictive proximate cause approach" to the necessary relationship, *Tatro* v. *Manor Care, Inc.*, 416 Mass. at 771, the court has also tempered its position. See *Nowak* v. *Tak How Invs., Ltd.*, 94 F.3d 708, 715-716 (1st Cir. 1996), cert. denied 520 U.S. 1155 (1997) (espousing flexible approach loosening proximate cause standard when circumstances dictate). Milbank's apparent failure to examine the implications of the documents it sent into Massachusetts for execution and its continued reliance on Jones to execute the opinion letter it drafted and sent to Massachusetts was a "meaningful link" between Milbank's contacts with Massachusetts and the harm Kansallis, and ultimately Fern, suffered. See *id.* at 716.

Having concluded that Milbank's negligence was related to its contacts with Massachusetts, I must consider the due process requirement of purposeful availment. See *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (setting out due process factors). The "cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Sawtelle* v. *Farrell, supra* at 1391. The "focus is on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.' " *Ibid.*, quoting from *Rush* v. *Savcheck*, 444 U.S. 320, 329 (1980).

I think Milbank's contacts with Massachusetts were more than random or fortuitous. As Milbank averred, "It is customary in a significant transaction for the Lender to request that the Borrower furnish to it as part of the closing package, an Opinion letter from [the] Borrower's counsel opining to issues such as authority to act, enforceability of documents, title and other issues." When it is the borrower's counsel who drafts an opinion letter and sends it to the lender's counsel, such a contact may well be more "random" and fortuitous" than "voluntary." Here, however, it was Milbank, counsel for the lender, that drafted the letter, as well as other critical documents. That action, and the decision to continue relying on Jones without confirming his bona fides, was not random; it was deliberate. See Fitzgibbon & Glazer, Legal Opinions §§ 1.1, 1.8 (2d ed. 2001) (negotiation and preparation of opinion letter is exercise in professionalism in which lawyers on both sides should work together to reach sensible result); Third-Party Legal Opinion Report, Including the Legal Opinion Accord, of the Section of Business Law, American Bar Association, 47 Business Lawyer 167, 226-227 (1991) (stressing importance of negotiation and collaboration in production of an opinion letter).

In these circumstances, it "was reasonably foreseeable, if not foreseen, rather than a surprise," *Haddad* v. *Taylor*, 32 Mass. App. Ct. at 336, that if the documents were faulty, as they were, Milbank might be involved in litigation in Massachusetts, where Milbank sent the letter for execution and where the loan proceeds were distributed to a Massachusetts partnership. See *ibid.* Contrast *Nash Finch Co.* v. *Preston*, 867 F.Supp. 866, 868-869 (D. Minn. 1994) (no Minnesota jurisdiction over Kentucky lawyer who sent opinion letter to Minnesota where letter was executed in Kentucky and loan proceeds were distributed there).

"Once it has been decided that a defendant purposely established minimum contacts . . . these contacts may be considered in light of other factors." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476 (1985). These other factors favor the Massachusetts forum Fern seeks. The burden on Milbank, a large New York law firm with an international practice, to litigate in Massachusetts should not be unduly onerous; Massachusetts has an interest in adjudicating the relative responsi-

bilities of a Massachusetts law firm in executing an opinion of counsel letter forwarded to it by Milbank. See *Burger King Corp., supra* at 477. Finally, the interstate aspects appear to be either evenly balanced or not relevant. I would reverse the judgment of the Superior Court, recognizing that Milbank may not be precluded from renewing their jurisdictional challenge if appropriate. See *Daynard* v. *Ness, Motley, Loadhalt, Richardson & Poole,* 290 F.3d 42, 63 (1st Cir. 2002).