**Dr. Vijai PANDEY, Plaintiff**

v.

**Lallan GIRI, et al, Defendants.**

**C.A. NO. 06–30109–MAP.**

United States District Court,
D. Massachusetts.

Oct. 20, 2006.

Vijai B. Pandey, Belchertown, MA, pro se.

Mark J. Albano, Dalsey, Ferrara & Albano, Springfield, MA, Deanna Peters, Jeffrey M. Schwaber, Stein, Sperling, Bennett, Dejong, Driscoll & Greenfeig, PC, Rockville, MD, Maura T. Healey, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Defendants.

Matthew Hertz, Bethesda, MD, pro se.

Solomon, Malech & Cohen, P.C., Bethesda, MD, pro se.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTIONS TO DISMISS* (Dkt. Nos. 6, 8, 12, 14 & 32)

PONSOR, District Judge.

This case arises out of what Chief Magistrate Neiman has rightly described as "a soured agreement for an arranged marriage." Dkt. No. 32 at 1. Plaintiff has sued Lallan and Kanti Giri ("the Giris") for falsely representing that their niece in India would be an appropriate spouse for Plaintiff's son, Pranjul. He has also sued Lallan's employer in Maryland, Emergent Biosolutions, the Giris' former attorney Matthew Hertz, and a Maryland-based law firm, Solomon, Malech & Cohen.

The Giris filed a Motion to Dismiss pursuant to Rule 12(b)(5) for insufficient services of process. All other Defendants moved to dismiss for lack of personal jurisdiction. These motions were referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On September 19, 2006, Chief Magistrate Judge Neiman issued his Report and Recommendation, to the effect that the Giris' Motion to Dismiss be construed as a Motion to Quash and be allowed on that basis, with Plaintiff given 120 days to attempt renewed service upon them. He also recommended that the other Defendants' motions to dismiss based on lack of personal jurisdiction be allowed.

Upon *de novo* review, the court hereby ADOPTS the Report and Recommendation of Chief Magistrate Judge Kenneth P. Neiman (Dkt. No. 32). The Giris' Motion to Dismiss (Dkt. No. 6), treated as a Motion to Quash, is hereby ALLOWED. For the reasons set forth in his memorandum, service of process upon the Giris was insufficient. That process is therefore hereby quashed, and Plaintiff will have until January 19, 2007 to effectuate proper service upon these defendants.

For the reasons set forth cogently in Magistrate's Judge Neiman's memorandum, the court has no personal jurisdiction over any of the other defendants in this case. The motions of the other Defendants to dismiss (Dkt. Nos. 8, 12, & 14) are therefore hereby ALLOWED.

Assuming proper service is effectuated upon the Giris on or before January 19, 2007, this matter will be referred to Chief Magistrate Judge Neiman for a pretrial scheduling conference. If no such proper service is effectuated by that date, the two remaining defendants will be dismissed as well, and this case will be closed.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTIONS TO DISMISS (Document Nos. 6, 8, 12 and 14)*

NEIMAN, Chief United States Magistrate Judge.

This sad case arises out of a soured agreement for an arranged marriage. At its core, Massachusetts resident, Dr. Vijai Pandey ("Plaintiff"), alleges that his long-time friends, Lallan and Kanti Giri ("the Giris"), falsely represented that their niece in India, Savita, was a "good match" for Plaintiff's son, Pranjul. Plaintiff claims that before realizing that the Giris had duped him—he asserts, without any apparent hesitation, that Savita was "ugly," "homely and unsuitable," with a "dark" rather than a "fair" complexion, "protruded bad teeth" and limited English proficiency—he expended a great deal of money, including the financing of a pre-wedding trip to India by his family. Proceeding *pro se*, Plaintiff brings this multi-count fraud and conspiracy action against the Giris, Lallan Giri's employer in Maryland, Emergent Biosolutions ("Emergent"), the Giris' former attorney, Matthew Hertz ("Hertz"), who practices law at the Washington, D.C. office of a Maryland-based law firm, Solomon, Malech & Cohen ("the Law Firm"), and the Law Firm itself (collectively "Defendants").

Currently at issue are four motions to dismiss: a motion filed by the Giris seeking dismissal pursuant to Rule 12(b)(5) for insufficient service of process; a motion filed by Emergent to dismiss the claims against it pursuant, in large part, to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction; and similar personal jurisdiction-based motions filed by Hertz and the Law Firm. District Judge Michael A. Ponsor has referred all four motions to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

For the reasons stated below, the court will recommend that the Giris' motion to dismiss for insufficient service of process be treated and allowed as a motion to quash and that Plaintiff be given 120 days to perfect service of process on them. The

court will also recommend that the personal jurisdiction motions filed by Emergent, Hertz and the Law Firm be allowed.

### I. BACKGROUND

The following facts are taken verbatim from the complaint. *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir.2006). Additional undisputed facts pertaining to personal jurisdiction put forward by Defendants are addressed in the court's discussion below. *See id. See also Callahan v. Harvest Bd. Int'l, Inc.*, 138 F.Supp.2d 147, 152–53 (D.Mass. 2001) (unlike with a Rule 12(b)(6) motion, "[t]he consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction") (citing cases).

7. . . . Plaintiff had known the [Giris] since 1979 when they came to Amherst, Massachusetts and lived under extremely humble, modest and [c]ompromising living standards and conditions.

.     .     .     .     .

9. Later on with good luck, Lallan [Giri] found a good paying job with . . . a[p]harmaceutical [c]ompany in New Jersey and then in Pennsylvania and then [moved] to . . . Rhode Island.

10. During all these years both families remained close, but [the Giris'] attitude and behavior began to change with the move to Rhode Island.

11. Then, Lallan was laid-off . . . and found a job with Bio Port Corporation ("Bio Port") in Lansing, Michigan . . . and moved there and then to Gaithersburg, Maryland with Emergent . . . , the parent company of Bio Port.

.     .     .     .     .

13. During the years with Bio Port and Emergent[,] [the Giris] made innumerable, [u]ninvited, unannounced and imposing visits, staying and using [Plaintiff]'s house and [c]omputer in Belchertown, Massachusetts for personal agenda and to conduct official [b]usiness for Bio Port and Emergent in [r]esearch and consultation at [the] University of Massachusetts at Amherst . . . and selfishly used [Plaintiff]'s house as [a][h]otel and [s]atellite office for over 3–4 years.

.     .     .     .     .

15. During one of these visits [the Giris] put a proposal of marriage of there [sic] niece Savita . . . to . . . Pranjul.

16. [The Giris] stated that it would be a great family favor and good [d]eed to have Savita married to Pranjul because Savita's father had died and the [f]amily was struggling and [it] would be extremely difficult to get married in India.

17. [Plaintiff] and [his wife] told [the Giris] that they knew that Pranjul was extremely [h]andsome and [of] fair complexion with [a] good personality and spoke English and [asked] whether Savita was equally beautiful with [a] fair complexion and a good match and spoke English[;] and [the Giris] assured that [Savita] was and will learn to speak English.

.     .     .     .     .

22. On or about August 22, 2003, Pranjul [and his mother and sister] traveled to New Delhi, India to meet and see Savita. . . .

23. When [they] met and saw Savita for the [f]irst time in New Delhi they were extremely shocked to find out that Savita was ugly with [a] dark complexion and protruded bad teeth and couldn't speak English to carry on [a] conversation[;] and [they] told [Plaintiff] about it.

24. [Plaintiff] told [his wife] to politely tell Savita's mother that [the] marriage was off.

.     .     .     .     .

27. [Sometime thereafter,] . . . [Plaintiff] told [Lallan Giri] that . . . he owed him over *$10,000* for expenses and costs incurred by him due to [the Giris'] fraudulent, unfair and deceptive acts and practices in defrauding, deceiving, inducing and duping [Plaintiff] to spend [m]oney for [t]elephone [c]alls and unnecessary visits to India by [his family], their stay, overseas telephone calls and money sent regarding their [u]tmost desire and proposal of marriage of Savita to Pranjul.

28. [Plaintiff] also told Lallan that [the Giris] intentionally and deliberately falsified and [m]isrepresented the facts and knew that Savita was homely and unsuitable and no [m]atch for Pranjul.

29. [Plaintiff] also told Lallan that [the Giris] . . . owed him over *$10,000* for their innumerable, uninvited, unannounced and imposing visits, staying and using [his] house in Belchertown . . . for personal agenda and to conduct official business for Bio Port and Emergent in the past 3–4 years.

30. On or about March 10, 2006, [Plaintiff] faxed a letter to [the Giris] asking for the prompt payment of their debt. . . .

31. Then, [the Giris] hired . . . Hertz . . . and [the law firm].

32. On MARCH 23, 2006, . . . Hertz [f]axed and sent a "Mafia like" letter by Federal Express to Plaintiff . . . that was extremely malicious, accusatory, threatening, intimidating, coercive and Hitlerlike.

(Complaint ¶¶ 7, 9–11, 13, 15–17, 22–24, 27–32.)

In June of 2006, Plaintiff filed the instant action in state court, contending that each defendant owes him $200,000. Thereafter, on July 5, 2006, the Giris, with the consent of the other defendants, removed the action to this forum based on diversity jurisdiction. *See* 28 U.S.C. § 1332.[1]

The complaint contains seven causes of action. Count I alleges fraud and deceit. Count II alleges civil conspiracy. Count III (directed only at the Giris and Emergent) alleges unjust enrichment. Count IV alleges invasion of privacy and interference with familial and quiet enjoyment of life. Count V alleges various violations by Hertz and the Law Firm of the Massachusetts Rules of Professional Conduct for attorneys. Count VI alleges violation of the Massachusetts Civil Rights Act. And Count VII alleges intentional infliction of emotional distress. In due course, Defendants filed their respective motions to dismiss and Plaintiff tendered his oppositions.

## II. *Discussion*

■ Before addressing Defendants' motions to dismiss, the court will recommend that Count V—which alleges various violations by Hertz and the Law Firm of the Massachusetts Rules of Professional Conduct for attorneys—be dismissed *sua sponte* with prejudice. Even assuming that Hertz and the Law Firm, who are not licensed to practice law in Massachusetts, are somehow bound by the Massachusetts Rules of Professional Conduct, it is well established in this jurisdiction that "[t]he disciplinary rules provide standards of professional conduct of attorneys and do not in and of themselves create independent causes of action." *Doe v. Nutter, McClennen & Fish*, 41 Mass.App.Ct. 137, 668 N.E.2d 1329, 1333 (1996) (citing cases). In

---

1. Plaintiff then sought remand of the case to state court, arguing that, since Defendants had been defaulted there, the Giris' removal was a "bad faith" ploy. By electronic order dated July 28, 2006, the court allowed Defendants' various motions to remove the defaults and, concomitantly, denied Plaintiff's motion to remand.

other words, in the event that this court's personal jurisdiction recommendations pertaining to Hertz and the Law Firm are adopted and Plaintiff then attempts to resurrect claims against them in another judicial forum (e.g., Maryland or Washington, D.C.), he will be precluded from suing them for alleged violations of the Massachusetts Rules of Professional Conduct.

### A. The Giris' Rule 12(b)(5) Motion to Dismiss

■ The Giris' Rule 12(b)(5) motion to dismiss can be dealt with relatively quickly. In short, the court agrees with the Giris that Plaintiff failed to sufficiently serve them by mail in accordance with state law, i.e., there exists no "proof of . . . a receipt signed by the addressee or such other evidence of personal delivery to the addressee." Mass. R. Civ. P. 4(f). Plaintiff offers no evidence to the contrary. Still, as the Giris themselves acknowledge, "dismissal of a case is not appropriate where 'there is a reasonable prospect that [the] plaintiff ultimately will be able to serve [the] defendant properly.' " Grant–Brooks v. Nationscredit Home Equity Servs. Corp., 2002 WL 424566, at *4 (N.D.Tex. Mar.15, 2002) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1354, at 289 (West 1990), and citing Stanga v. McCormick Shipping Corp., 268 F.2d 544, 554 (5th Cir.1959)) (emphasis added). As the leading treatise on the topic proposes, "the simplest solution" is "to quash process and allow the plaintiff another opportunity to serve the defendant." 5B Federal Practice and Procedure § 1354 (West 2006) (citing cases). See also Bailey v. Boilermakers Local 667 of Int'l Bhd. of Boilermakers, 480 F.Supp. 274, 278 (N.D.W.Va. 1979) (noting that where service is ineffective but the defects are curable, the court may treat Rule 12(b)(5) motion as one to quash service of process and retain the

case pending the achievement of effective service by the plaintiff).

The court suggests that such a solution is appropriate here. For one thing, this action is at its most nascent stage. Second, the Giris have demonstrated no prejudice stemming from the imperfect service. Finally, the Giris do not seem to object to this procedure. Accordingly, the court will recommend that the Giris' motion to dismiss be treated and allowed as a motion to quash and that Plaintiff be given an additional 120 days to perfect service on them.

### B. The Rule 12(b)(2) Motions to Dismiss

The court now turns to the more substantive Rule 12(b)(2) motion to dismiss filed by Emergent and the somewhat parallel motions filed by Hertz and the Law Firm. In discussing these motions, the court begins by framing the First Circuit's personal jurisdiction standards. It then evaluates whether under these standards each defendant is subject to the court's jurisdiction. As will be explained, the court believes that neither Emergent, Hertz nor the Law Firm is subject to personal jurisdiction in this forum and, therefore, will recommend that their motions to dismiss be allowed.

#### 1. Personal Jurisdiction Standards

"When embarking upon the fact-sensitive inquiry of whether a forum may assert personal jurisdiction over a defendant, the court's task is not a rote, mechanical exercise." Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir.1995) (citations and internal quotation marks omitted). See also id. ("Divining personal jurisdiction is more an art than a science.") (citations and internal quotation marks omitted); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 389 N.E.2d 76, 78 (1979) ("Generally speaking, 'inquiries into whether the exer-

cise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case.' ") (quoting *Great W. United Corp. v. Kidwell,* 577 F.2d 1256, 1266 (5th Cir.1978)). Rather, the court is bound to pursue a two-part inquiry: (1) whether the plaintiff has demonstrated that the assertion of jurisdiction is authorized by statute, and, if authorized, (2) whether such assertion comports with the restraints imposed by the Due Process Clause of the United States Constitution. *See Sawtelle,* 70 F.3d at 1387; *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995).

■ With regard to the first part of the inquiry, the law of the forum state applies. *Sawtelle,* 70 F.3d at 1387. In applicable part, Massachusetts' long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth [or]
>
> .     .     .     .     .
>
> ... (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered, in this commonwealth....

Mass. Gen. L. ch. 223A, § 3(a), (d). As for the second part of the inquiry, the First Circuit has designated "three distinct components" in the due process analysis, "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness," *Foster–Miller,* 46 F.3d at 144, each of which must be satisfied, *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994). Finally, the court

is mindful that "the plaintiff bears the burden of proving that jurisdiction lies in the forum state." *Sawtelle,* 70 F.3d at 1387 (citing, *inter alia, McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

#### 2. *Emergent*

In the case at bar, Plaintiff offers next to nothing to support his contention that this court may exercise personal jurisdiction over Emergent, the Maryland company for whom Lallan Giri works. While Plaintiff blanketly states that Emergent's activities—presumably through the Giris—satisfy the "Long's [sic] Arm Statute, M.G.L. 223A," he fails to explain how, let lone cite any particular statutory provision.

To be sure, Plaintiff alleges in paragraphs 13 and 29 of his complaint that the Giris used his computer to conduct "official business" related to Emergent and, *ergo,* implies that Emergent itself "transacted business" in Massachusetts. *See* Mass. Gen. L. ch. 223A, § 3(a). That speculation, however, is belied by the undisputed facts Emergent cites. Specifically, Kyle W. Keese, Emergent's Senior Vice President of Marketing and Communications, unequivocally avers that Emergent is incorporated in Delaware, maintains its principal place of business in Montgomery County, Maryland, and, most significantly, "does not maintain any office in the Commonwealth of Massachusetts [and] is not registered or qualified to transact business in the Commonwealth of Massachusetts." (Document No. 8, Exhibit 1 ¶¶ 2–4.)

■ Even if the court accepts that Emergent was for all intents and purposes "transacting business" in Massachusetts in ways implied in the complaint, the instant action is not one "arising from" that activity. Mass. Gen. L. ch. 223A, § 3. *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 553 (1994) (focusing on

"but for" causation in "arising from" analysis). At most, the complaint suggest that the Giris *imposed* themselves on Plaintiff, in part, by conducting Emergent business at Plaintiff's home. There is no indication, however, that the *business* itself (and hence, Emergent) caused Plaintiff's injuries in relation to his underlying claims. *See also A–Connoisseur Transp. Corp. v. Celebrity Coach, Inc.*, 742 F.Supp. 39, 43 (D.Mass.1990) (while a "one-shot" transaction might justify personal jurisdiction, "the cause of action must arise from that business").

Accordingly, the court finds that Plaintiff has failed to sustain his burden of proving that personal jurisdiction over Emergent is authorized by Massachusetts' long-arm statute. The court, therefore, will recommend that Emergent's motion to dismiss be allowed.[2]

### 3. *Hertz and the Law Firm*

Plaintiff has also offered scant evidence linking Hertz—or the Law Firm through Hertz—to this forum. At most, Plaintiff alleges that Hertz sent a single letter which subjected him and the Law Firm to this court's jurisdiction. The court disagrees.

In their identical motions to dismiss, Hertz and the Law Firm skip the Massachusetts long-arm statute, as well as the relatedness prong of the due process inquiry, and go straight to the second and third due process prongs: purposeful availment (sometimes called "minimum contacts") and reasonableness. The court finds this approach appropriate for present purposes and will do likewise.

---

2. The court makes this recommendation without considering Emergent's equally persuasive arguments that personal jurisdiction would not comport with due process, that Plaintiff's complaint fails to state claims against Emergent upon which relief may be granted, *see* Fed.R.Civ.P. 12(b)(6), that Plaintiff insufficiently served Emergent with process, *see* Fed.R.Civ.P. 12(b)(5), or that the action should be transferred to a more convenient forum.

### a. *Purposeful Availment*

The "purposeful availment" or "minimum contacts" prong of the due process inquiry is designed to assure that personal jurisdiction is not premised solely upon a defendant's "random, isolated, or fortuitous" contacts with the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In other words, a plaintiff must demonstrate that the defendant's contacts "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before [a Massachusetts] court foreseeable." *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir.1994) (citation and internal quotation marks omitted).

In the court's view, Plaintiff has not demonstrated that Hertz and the Law Firm purposely availed themselves of the privilege of conducting activities in Massachusetts. For one thing, it is undisputed that Hertz is not licensed to practice law in Massachusetts and has never even been to this state. There is also no dispute that the Law Firm has its primary offices in Maryland and a second office in Washington, D.C., that Hertz works principally in the Washington, D.C. office, that neither Hertz nor the Law Firm has ever performed business or business-related activities in Massachusetts, and that neither Hertz nor the Law Firm has ever advertised or solicited business in Massachusetts. (See Hertz's Motion ¶¶ 4–5, 7; Law Firm's Motion ¶¶ 4–5, 7.)

To be sure, it was Hertz who arguably initiated contact with Plaintiff via the letter he sent to Massachusetts. But that occurred only after Plaintiff himself contacted the Giris numerous times. It is clear, therefore, that Hertz was not reaching out to Plaintiff to solicit business or create some type of attorney-client relationship. *Compare New Life Brokerage Servs. Inc. v. Cal-Surance Assoc. Inc.*, 222 F.Supp.2d 94, 107 (D.Me.2002) (finding personal jurisdiction where defendant, *inter alia*, solicited business, sent advertisements, and was licensed to practice business in the forum), *with Litchfield Fin. Corp. v. Buyers Source Real Estate Group*, 389 F.Supp.2d 80, 88 (D.Mass.2005) (no personal availment where attorney did not initiate contact with the plaintiffs). In other words, Hertz is hardly "akin to a seller who solicits revenue from a resident of the forum state." *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 933 (1st Cir.1985).

The court's previous decision in *Litchfield* is instructive in this regard. In *Litchfield*, Judge Ponsor, adopting this court's recommendation, held that the sending of three letters by a South Carolina attorney to Massachusetts residents did not constitute "purposeful availment." *Id.*, 389 F.Supp.2d at 81. As this court noted in its recommendation, the attorney there, similar to Hertz, was not licensed to practice law in Massachusetts, had never been to this state, owned no property here, had never entered into a contract to be performed within the commonwealth, and did not initiate contact with the plaintiffs. *See id.* at 88.

True, some of the present facts are slightly different, *e.g.*, the claims against the *Litchfield* attorney were *negligence*-based, *see id.* at 89–90, whereas here it appears that Hertz and the Law Firm are being sued for *intentional* torts. However, much of the rationale is the same; for example, if this court were to find that Hertz's letter constituted minimum contacts, that could possibly " 'mean that anytime a lawyer sent a letter beyond his or her state's borders, that lawyer would be subject to personal jurisdiction.' " *Id.* at 89 (quoting *Nash Finch Co. v. Preston*, 867 F.Supp. 866, 868–69 (D.Minn.1994)). " 'Such a rule would make interstate law practice all but impossible' because a lawyer 'could well be susceptible to the jurisdiction of every state in the union.' " *Id.* (quoting *Nash Finch*, 867 F.Supp. at 869). *See also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir.1996) (holding that "purposeful availment" component was not met where "the only connection between" the attorney and the plaintiff was a letter).

A final—and in this court's opinion, fatal—flaw with respect to Plaintiff's argument is its speculative nature. Plaintiff, again without apparent hesitation, describes Hertz's letter in his complaint as being "Mafia like" as well as "extremely malicious, accusatory, threatening, intimidating, coercive and Hitlerlike." These are hardly "facts" upon which the court may rely. It is well-established that a plaintiff "may not rely on unsupported allegations in [his] pleadings" and is "obliged to adduce evidence of specific facts." *Platten*, 437 F.3d at 134 (citations and internal quotation marks omitted). Plaintiff has not done this at all. Accordingly, the court finds that Plaintiff has failed to sustain his burden of proving sufficient minimum contacts.

### b. *Reasonableness*

If Judge Ponsor were to agree that, as described, Plaintiff has not satisfied the second component of the due process inquiry, it would of course be unnecessary to analyze the reasonableness prong. None-

theless, the court will touch on this prong of the analysis in order to provide a comprehensive report and recommendation. *Cf. Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 711 (1st Cir.1996) (indicating that assessment of third prong is important where minimum contacts question is very close).

The Supreme Court has long held that the assertion of jurisdiction over a defendant must "not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In analyzing this "reasonableness" component, a court typically weighs five elements, often referred to as the "gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Foster–Miller*, 46 F.3d at 150.

■ In this court's estimation, the gestalt factors favor dismissal of the claims against Hertz and the Law Firm. As for the first factor, it is doubtless burdensome for both Hertz and the Law Firm, with no connection to Massachusetts, to litigate this action here. The second factor also favors Hertz and the Law Firm; Massachusetts has little interest in controlling the conduct of attorneys who have no con-

nection to this forum. The third factor, of course, favors Plaintiff, but, with respect to the fourth factor, the court cannot conceive that the judicial system as a whole would benefit from forcing Plaintiff's claims against Hertz and the Law Firm to be litigated here. Finally, with regard to the fifth factor, the claims against Hertz and the Law Firm, in the court's opinion, do not raise "substantive social policies," let alone ones which should be resolved in Massachusetts. At bottom, the court has little choice but to recommend that Hertz and the Law Firm's motions to dismiss be allowed.

## III. Conclusion

For the foregoing reasons, the court recommends as follows:

(1) that Count V be DISMISSED *sua sponte* with prejudice;

(2) that the Giris' motion to dismiss for insufficient service of process (Document No. 6) be treated and ALLOWED as a motion to quash and that Plaintiff be given 120 days to perfect service of process on them;

(3) that Emergent's motion to dismiss (Document No. 8) be ALLOWED;

(4) that Hertz's motion to dismiss (Document No. 12) be ALLOWED; and

(5) that the Law Firm's motion to dismiss (Document No. 14) be ALLOWED.[3]

---

**3.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts,

any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report

and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1 st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1 st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.